837 F.2d 475
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Floyd BRITTEN, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellant.
 No. 86-1995.
 United States Court of Appeals, Sixth Circuit.
 Jan. 15, 1988.
 
 Before RALPH GUY, Jr., and WELLFORD, Circuit Judges, and HARVEY, Senior District Judge*.
 PER CURIAM.
 
 
 1
 Floyd Britten appeals the district court's judgment affirming the Secretary's decision denying disability benefits. We affirm.
 
 
 2
 Britten filed an application for disability insurance benefits on September 9, 1982. This application was denied initially and upon reconsideration. Britten's request for an administrative hearing was granted, and the hearing was held on September 13, 1983. On November 18, 1983, the Administrative Law Judge (ALJ) ruled that Britten was not disabled. Britten requested a review of the ALJ's decision, but the Appeals Council denied the request on January 5, 1983, adopting the ALJ's decision as the final decision of the Secretary of Health and Human Services. Britten sought judicial review of the Secretary's decision in the District Court for the Western District of Michigan. On August 29, 1986, the district court affirmed the Secretary's decision.
 
 
 3
 Britten was born on April 26, 1938. He graduated from high school and attended college for a year and a half. After leaving school, Britten worked as a printer for approximately one year. He then went to work for Eaton Industries (Eaton) where he worked in various capacities including assembler, drill press operator and janitor inspector. Britten last worked in March 1980.
 
 
 4
 Britten testified that he suffers severe pain in his left knee and lower back which precludes him from either standing or sitting for prolonged periods of time. Britten indicated that his left knee was fused in 1963 and that he could not bend his leg at the knee at all. He testified that because of the extensive problems with his left leg he has favored his right leg, thus causing pain to develop in his right leg. He also indicated that numbness in his forefinger and thumb of his right hand often make it difficult to grab an object with his right hand. Britten is able to drive a car, fixes meals for his children and occasionally visits a neighbor.
 
 
 5
 The medical evidence includes a copy of a deposition taken of Dr. Steven G. Tarangle on December 29, 1980, in conjunction with Britten's worker's compensation case. The doctor stated that he first saw Britten on November 2, 1978, because of back pain and complaints of numbness in his right leg. The doctor noted that Britten did have a fused left knee and some muscle atrophy in his lower left leg. Britten was hospitalized for diagnostic purposes and was seen by the doctor on a regular basis after that. The doctor indicated that he had written a letter to Britten's employer in February 1980, indicating that Britten could not be placed in any job which prevented Britten from sitting and standing as he felt necessary and that Britten should be limited in his lifting to no more than ten pounds. The doctor stated that he saw Britten again in September and in November 1980, placing an additional restriction upon his employment indicating that Britten should be allowed to do whatever he needed to do in order to be comfortable. The doctor also stated that he did not find evidence of a neurological difficulty with respect to Britten's back complaints, noting that there wasa muscle spasm present on occasion in his back.
 
 
 6
 In May 1981, Britten was involved in an automobile accident in which he sustained a fracture of the left leg, some fractured ribs and multiple contusions and abrasions. He also complained of numbness in the right hand. He was treated by Dr. T.C. Lindquist between May 19, 1981, when he was admitted to the hospital, and December 31, 1981. During his deposition, Dr. Lindquist indicated that the facture was completely healed by December 1981.
 
 
 7
 With respect to the numbness in Britten's right arm, the doctor tested both the strength and range of motion of Britten's arm. He indicated the findings were unremarkable for an individual of Britten's age and build, showing approximately normal strength and normal range of motion. He also indicated that Britten could use his right arm for normal activities, although there might be a question whether he could use the arm for repeated and prolonged activities involving heavy work.
 
 
 8
 Dr. Lindquist found no medical evidence in support of Britten's complaints of low back pain and observed no muscle spasm. The doctor found that Britten had full range of motion of his back. The doctor considered Britten totally disabled based on the multiplicity of Britten's complaints and problems.
 
 
 9
 Britten was examined by Dr. G. Vetne. The doctor found that Britten's upper extremities showed normal strength and mobility bilaterally, except for possible slight weakness upon flexion of the fourth and fifth fingers of the right hand which the doctor considered to be minimal. He indicated that Britten did not show any evidence of further infection in his left knee and that he could walk very well with a cane, although he did show evidence of a moderate limp of the left leg. It was his clinical impression that Britten did have fixed flexion of his left knee. He stated that Britten's back showed normal mobility and that he could not find any significant neurological abnormalities.
 
 
 10
 As of November 24, 1982, Dr. Gerald C. Gass indicated that Britten did have a chronic fibromyositis of the lumbar musculature and that his rotation of the lumbar spinal area was restricted approximately 50 percent. He further indicated that because of the fusion of the left knee the left quadraceps muscle was weak. He concluded that Britten's chances for being self-supporting were rather slim because he had no training for an occupation other than that involving physical labor, because he did not feel anyone would hire Britten due to his leg and back restrictions, and because he felt Britten lacked motivation.
 
 
 11
 The ALJ found that Britten has severely limited motion of his left leg and is limited in his ability to stand or walk for extensive periods of time. The ALJ also held that Britten has almost full functional use of his right arm and hand and that his complaints of disabling low back pain were not supported by the medical evidence. The ALJ rejected Dr. Gass and Lindquist's conclusion that Britten was disabled, finding that Britten was not prevented from performing sedentary jobs which would allow a sit and stand option. He concluded that Britten was not disabled under 20 C.F.R. Pt. 404, Subpart P., App. 2, Rules 201.18 and 27.
 
 
 12
 Pursuant to 42 U.S.C. Sec. 405(g), judicial review of the Secretary's decision is limited to determining whether substantial evidence exists in the record as a whole to support the decision. The reviewing court "may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." Gardner v. Heckler, 745 F.2d 383, 387 (6th Cir.1984). The Secretary is charged with finding the facts relevant to an application for disability benefits, and the Secretary's findings, if supported by substantial evidence, are conclusive. 42 U.S.C. Sec. 405(g).
 
 
 13
 Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison v. NLRB, 305 U.S. 197, 229 (1938)). "Substantiality of the evidence must be based upon the record as a whole" and " 'must take into account whatever in the record fairly detracts from its weight.' " Garner, 745 F.2d at 388 (quoting Beavers v. Secretary of Health, Education & Welfare, 577 F.2d 383, 387 (6th Cir.1978)).
 
 
 14
 Once the claimant establishes that he cannot perform his past relevant work, the burden shifts to the Secretary to establish that the claimant retains the residual functional capacity to perform substantial gainful work which exists in the national economy. Varley v. Secretary of Health & Human Services, 820 F.2d 777, 779 (6th Cir.1987); see also Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir.1986). Substantial evidence must support a finding that the claimant has the vocational qualifications to perform specific jobs. Richardson v. Secretary of Health & Human Services, 735 F.2d 962, 964 (6th Cir.1984) (per curiam). The Secretary may meet this burden by reference to the medical-vocational guidelines ("girds"). Cole v. Secretary of Health & Human Services, 820 F.2d 768, 771 (6th Cir.1987). Where a claimant's characteristics fit the grid pattern, expert testimony is "unnecessary to show a significant number of jobs in the economy as the grids take the availability of jobs into account." Siterlet v. Secretary of Health & Human Services, 823 F.2d 918, 923 (6th Cir.1987) (per curiam).
 
 
 15
 Britten raises several objections to the disposition of his claim. He first contends that the Secretary's decision is unsupported by substantial evidence. He claims that three treating physicians concluded that he is totally disabled. Upon reviewing these opinions, however, it is clear they are not as conclusive as Britten alleges. See Hardaway v. Secretary of Health & Human Services, 823 F.2d 922, 926 (6th Cir.1987).
 
 
 16
 Initially, Dr. Tarangle never concluded that Britten was totally disabled. In February 1980, he sent a letter to Eaton recommending that Britten be permitted the liberty of sitting or standing as required and that he refrain from lifting weight in excess of 10 pounds. In October 1980, the doctor sent another letter to Eaton recommending that Britten do whatever he needed to make himself comfortable. The doctor's recommendations are consistent with the ALJ's conclusion that Britten is capable of performing sedentary work with a sit or stand option.
 
 
 17
 Dr. Gass's conclusion that Britten's chances for being self-supporting are slim is not supported by any medical evidence. He merely indicated that he didn't know who would hire Britten with his leg and back restrictions and that Britten lacked motivation.
 
 
 18
 Dr. Lindquist indicated in his clinical records on December 22, 1981, that based upon his discussion with Britten concerning the numbness in his right hand, his low back pain and fused knee, he considered Britten totally disabled. In his deposition, he testified that his determination was based upon the sum of Britten's several ailments. The conclusion reached by Dr. Lindquist is contradicted by his own tests and observations. The doctor indicated that Britten had fairly normal use of his right hand and arm. He also found that Britten had a full range of motion with his low back and found no medical evidence which would support Britten's claim of pain.
 
 
 19
 The restrictions of Dr. Tarangle do not amount to a declaration of disability. Additionally, the medical evidence belies Drs. Gass and Lindquist's conclusion of disability. Finally, Dr. Vetne's findings also indicate that Britten is capable of performing certain sedentary jobs. Thus there is substantial evidence in the record to support the ALJ's rejection of Britten's treating physicians' opinions and conclusions.
 
 
 20
 Closely akin to his first argument, Britten also claims that the Secretary erred in failing to accord conclusive weight to the opinions of his three treating physicians that he was disabled. The determination of disability is the prerogative of the Secretary, not the treating physicians. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir.1985); King v. Heckler, 742 F.2d 968, 973 (6th Cir.1984). Thus, the determination by Drs. Gass and Lindquist that Britten is disabled is not conclusive. Although "[t]he medical opinions and diagnoses of treating physicians are generally accorded substantial deference," this is true "only if the physician's opinion is based on sufficient medical data." Harris, 756 F.2d at 435. Garner v. Heckler, 745 F.2d 383, 391 (6th Cir.1984). Dr. Tarangle did not conclude that Britten was disabled. Dr. Gass's determination was conclusory in nature and not supported by any medical findings. Dr. Lindquist's conclusion was not supported by any of his clinical findings. Accordingly, the Secretary was not bound by the opinions of the treating physicians that Britten was disabled.
 
 
 21
 Britten next contends that the ALJ improperly discounted evidence of severe pain. The ALJ concluded that although Britten has genuine vocational limitations because of his multiple problems, his subjective complaints of pain and limitations were not sufficiently credible to conclude that he is prevented from performing jobs of a sedentary nature.
 
 
 22
 The test for reviewing claims of disabling pain is set forth in Duncan v. Secretary of Health & Human Services, 801 F.2d 847, 853 (6th Cir.1986):
 
 
 23
 First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.
 
 
 24
 Id. See Siterlet, 823 F.2d at 920-921.
 
 
 25
 There is clear medical evidence establishing an underlying leg impairment and other nonsevere symptoms. Nevertheless, as previously stated, there is substantial evidence to support the ALJ's conclusion that the objective medical evidence does not confirm the severity of the alleged pain. Additionally, there is not an objectively established medical condition of such severity that it could reasonably be expected to produce the alleged disabling pain.
 
 
 26
 Finally, Britten's contention that the ALJ's finding of nondisability was based solely on personal observation and thus is conclusory and speculative is simply incorrect. The ALJ properly considered the medical evidence and reports of each of the physicians in making his determination.
 
 
 27
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable James Harvey, United States District Court for the Eastern District of Michigan, sitting by designation