815 F.2d 80
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Edward A. SITERLET, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 86-1062.
 United States Court of Appeals, Sixth Circuit.
 Feb. 20, 1987.
 
 Before KEITH, KRUPANSKY and GUY, Circuit Judges.
 PER CURIAM:
 
 
 1
 This appeal arises from a final decision of the Honorable James Churchill of the United States District Court for the Eastern District of Michigan, Northern Division, denying appellant's application for disability insurance benefits under the Social Security Act. Appellant, Edward Siterlet, first filed an application for social security disability benefits on April 30, 1980, which was denied initially, upon reconsideration, and by an Administrative Law Judge (ALJ) after a hearing on January 16, 1982. Appellant's request for review with the Appeals Council was denied on June 10, 1982, and he failed to pursue his right to judicial review, rendering the Secretary's decision final. On October 12, 1982, appellant filed the present application, alleging a disability onset date of December 1978. However, appellant does appear to challenge his initial determination of non-disability, and the ALJ specifically found that since that prior decision involved the same parties, facts and issues for the period through January 16, 1982, that prior finding was res judicata through that date. Therefore, appellant's current claim is confined to establishing disability between the dates of January 17, 1982 and March 31, 1983, the date his insured status expired. Since we find substantial evidence to support the Secretary's decision that appellant is not disabled, the district court decision is affirmed.
 
 
 2
 Appellant's present application alleges disability due to a pinched sciatic nerve, degenerative disc disease, lumbosacral sprain and strain, arthritis, and high blood pressure. The application was denied in initial and reconsidered determinations. Administrative Law Judge Robert Hall issued a decision denying the application on September 5, 1984. The ALJ indicated that appellant was suffering from a back impairment due to strain and injuries occurring during his thirty years working as a carpenter. However, his back problems and other complaints, including those of severe pain, were found not to preclude him from performing sedentary work for which he was determined to have sufficient transferable skills.
 
 
 3
 Two medical reports submitted by appellant relating to his current claim are dated during the relevant period. Both reports are from Dr. Nordgaard and are dated April 2, 1982. Dr. Nordgaard indicated in those reports that he had last seen claimant in December, 1979. Thus, these reports relate only to the period for which appellant had already been found not disabled. The balance of the medical evidence of record post dates the expiration of his insured status. The ALJ gave considerable credence to the report of Dr. Victor Mateskon, dated April 6, 1983. Appellant was diagnosed as having mild chronic disc disease at L 4--5 and L 5--S 1 with right sciatic radiation of pain, mild chronic degenerative osteoarthritis of the lumbar spine and recurrent low back strain. It was Dr. Mateskon's opinion that the exact degree of appellant's functional capacity and disability was difficult to assess because there was "little objective organic pathology demonstrable." However, he did say that claimant would be disabled from doing "heavy" manual labor and even light work if it involved lifting over 25 pounds on a frequent basis or frequent bending, stooping, twisting, pushing or pulling activities involving use of the back. With these limitations, appellant would be restricted from light work activities; however, the restrictions are not inconsistent with his ability to do sedentary work.
 
 
 4
 The rest of the medical evidence indicates that plaintiff may have been disabled as of late 1983. In November, 1983, Dr. Modzinski reported that plaintiff was depressed and unmotivated. His prognosis was poor. A physical capabilities evaluation by Dr. Modzinski indicated that plaintiff was incapable of sitting for more than one hour and could not stand or walk at all. In addition, he was also unable to grasp, push, pull, or do fine manipulation.
 
 
 5
 In December 1983, Dr. Maxim concluded plaintiff was totally disabled and stated that "his back condition would preclude him from even being capable of very favored sedentary work." He categorized the condition as permanent and progressive in nature.
 
 
 6
 In March, 1984, plaintiff was examined by Dr. Crawford for the Disability Determination Service. Dr. Crawford diagnosed severe neurotic depression and dependent personality disorder. He concluded that plaintiff's prognosis was poor as he did not have the will power or the strength of character to do something about his problems. He felt it was highly improbable that plaintiff would ever be able to return to functional employment. Dr. Crawford also completed a physical capabilities study in which he indicated plaintiff could grasp, push, pull and do fine manipulation, but that he could not sit, stand or walk for a period of even one hour.
 
 
 7
 The last post-March, 1983 evidence consists of a report from Bob Snow of Certified Rehabilitation Services dated April 9, 1984. His conclusion after evaluating plaintiff was that he "seriously questioned whether any vocational rehabilitation effort could be developed which would satisfactorily overcome the variety of complaints and objections which plaintiff expresses and finds documentation for in the various medical reports."
 
 
 8
 The ALJ found that appellant suffered from a severe back impairment as well as a combination of non-severe ailments, including exogenous obesity, mild depression, hypertension, degenerative arthritis of the right hip and other arthritic changes, and diabetes. The ALJ further found that appellant's allegations of pain were not of the severity that had been alleged and that appellant could perform sedentary work. The ALJ also found that appellant had transferable work skills and concluded that appellant was not disabled pursuant to Rule 201.11 of Table No. 1, Appendix 2, Subpart P, Regulations No. 4.
 
 Appellant alleges the following on appeal:
 
 9
 1) the ALJ failed to give substantial weight to the opinion of the "treating" physician, Dr. Modzinski;
 
 
 10
 2) the ALJ improperly discounted evidence of debilitating pain; and
 
 
 11
 3) the ALJ erred in finding claimant to have "transferable skills" and that the vocational expert failed to properly identify jobs existing in significant numbers which claimant was capable of performing.
 
 
 12
 Our review of the Secretary's decision is limited to determining whether there is substantial evidence in the record to support the decision. A reviewing court "may not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.1984). The Secretary is charged with finding the facts relevant to an application for disability benefits, and the Secretary's findings, if supported by substantial evidence, are conclusive. 42 U.S.C. Sec. 405(g).
 
 
 13
 Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Even if the court might arrive at a different conclusion, the decision must be affirmed if supported by substantial evidence. Lane v. Gardner, 374 F.2d 612, 616 (6th Cir.1967). In the case at bar, while we recognize the presence of some conflicting evidence in the record, we nevertheless find substantial evidence to support the Secretary's determination that appellant failed to establish disability prior to the expiration of his insured status.
 
 
 14
 Appellant argues that the ALJ failed to give substantial weight to the opinion of Dr. Modzinski. Appellant makes much of the fact that Dr. Modzinski was his treating physician and that he placed such significant limitations on his activities as to allow him to be considered totally disabled. He further argues that since Dr. Modzinski's conclusions are supported by those of Drs. Maxim and Crawford, these combined medical opinions should have resulted in a finding of disability under the Act. Appellant fails to mention, however, that Dr. Modzinski first saw him on November 23, 1983, almost eight months after expiration of his insured status. Appellant suffers from one or more degenerative disorders. Thus, Dr. Modzinski's report is minimally probative of his condition prior to March 31, 1983. In addition, it appears that Dr. Modzinski relied heavily on tests conducted by others, and he acknowledged that his interpretations were at odds with those of other physicians. We also note that the medical opinions of Drs. Maxim and Crawford were rendered after initial consultations on December 22, 1983, and March 16, 1984, respectively. Neither of those opinions can confirm a finding of disability during the relevant time period. Thus, we find sufficient evidence in the record to support the ALJ's rejection of Dr. Modzinski's opinions and conclusions.
 
 
 15
 We also find no valid basis for appellant's contention that the ALJ improperly discounted evidence of severe pain. This court has held that credibility determinations with respect to subjective complaints of pain rest with the ALJ. Kirk v. Secretary of HHS, 667 F.2d 524, 538 (6th Cir.1981). As noted in Duncan v. Secretary of HHS, 801 F.2d 847 (6th Cir.1986), we review appellant's claims under Congress' new temporary statutory standard, presently codified at 42 U.S.C. Sec. 423(d)(5)(A).[1] Under this standard, "[t]here must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain." S.Rep. No. 466, 98th Cong., 2d Sess. 24, reprinted in 130 Cong.Rec. S6221 (daily ed. May 22, 1984). See Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir.1986) (per curiam).
 
 
 16
 There is clearly medical evidence establishing an underlying back impairment, as well as other non-severe conditions. However, we find substantial evidence to support the ALJ's conclusion that the objective medical evidence neither confirms appellant's pain nor reveals a medical condition which could reasonably be expected to produce pain of the severity claimed by Siterlet. None of Siterlet's physicians diagnosed his pain as severe or disabling. The ALJ's rejection was based on his personal observation of appellant as well as the lack of medical evidence to support his complaints of constant, debilitating pain. In assessing both Siterlet's claims of debilitating physical impairments and severe pain, a review of daily activity sheets filled out by the appellant during the week of April 28 through May 4, 1984, are instructive. On each of those seven days, appellant left home to run errands. The daily log shows trips (in which appellant drove) to various shops and stores to pick up groceries and other items, restaurants, the Eagles Hall, a gas station and the homes of friends and relatives. In contrast, he apparently reported to Mr. Ancell, a vocational rehabilitation consultant who saw him in April of 1983, that he spends his day "walking from room to room, watching television and reading." In addition, appellant reported to HHS in September of 1982 that he fishes weekly in the summer and hunts four hours a day for three days during deer hunting season. Based on the foregoing, we find substantial evidence to support the Secretary's finding that Siterlet could engage in a full range of sedentary work at the time his insured status expired.
 
 
 17
 We turn now to appellant's contention that he lacked "transferable skills" which would permit a finding of non-disability based on Rule 201.11 of Table 1, App. 2, Subpart P. In Ellington v. Secretary of HHS, 738 F.2d 159 (6th Cir.1984), this Court considered the meaning of "transferable skills". This same issue had been discussed in Blake v. Secretary of HHS, 528 F.Supp. 881 (E.D.Mich.1981). In Blake, Judge Cohn stated:
 
 
 18
 The vocational expert blurred an important difference between "skill" and "aptitude". Webster defines "skill" as the "learned power of doing something competently: a developed or acquired aptitude or ability". A skill, unlike a simple aptitude, is acquired and relates to doing a specific act. Although the regulations never explicitly define either skill or aptitude, this distinction is implicit. The regulations repeatedly assume that skills are acquired. Skills relate to specific "vocationally significant work activities", while aptitudes involve only "basic work activities ... necessary to do most jobs".
 
 
 19
 528 F.Supp. at 885-86 (footnotes omitted).
 
 
 20
 Here, the vocational expert testified at the hearing that appellant had transferable skills in blueprint reading; supervising, directing, and scheduling the work of others; and operating a cash register. He testified that those skills would enable appellant to perform jobs such as a desk clerk, order clerk or cashier. He admitted, however, that if appellant's testimony and recent medical reports were found to be completely credible, there would be no jobs appellant could perform. But if appellant were found capable of performing sedentary work, there were 4,500 semi-skilled jobs requiring appellant's abilities.
 
 
 21
 Despite the fact that appellant informed one vocational counsellor that he had difficulty performing elementary math calculations and had always worked under the direction of others, he had previously described his carpentry duties to HHS as "being able to read and understand blueprints for residence to commercial buildings.... I was carpenter working myself up to leader of 8 men and layout man for as high as 28 men. My main position being skilled carpenter, rough. I have done finish building custom cabinets, stairs and furniture." On another occasion, he reported to HHS that his carpentry work entailed "figuring of houses from ground to roof." Also, although he testified that he was not involved in running the bar that he and his wife operated from 1979 through 1981, he acknowledged that he could run a cash register and the ALJ specifically found that appellant and his wife minimized to the point of incredulity his role in operating the bar. Operating a cash register, functioning independently in conducting a business, reading blueprints and using tools are all clearly more than "basic work activities" and are properly considered "acquired aptitudes or abilities." As such, they constitute skills acquired in his past relevant work which the vocational expert found transferable to other semi-skilled work, all of which clearly supports the ALJ's finding that use of Rule 201.11 of the grid was applicable to appellant and directed a finding of non-disability. Since the appellant's characteristics fit the grid pattern, expert testimony was unnecessary to showa significant number of jobs in the economy, as the grids take the availability of jobs into account. Heckler v. Campbell, 461 U.S. 458, 468 (1982); Kirk v. Secretary of HHS, 667 F.2d 524, 530-31 (6th Cir.1981).
 
 
 22
 Finding substantial evidence to support the Secretary's decision, we AFFIRM.
 
 
 
 [1]
 An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or phychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability. Objective medical evidence of pain or other symptoms established by medically acceptable clinical or other laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability
 
 
 [42]
 US.C. Sec. 423(d)(5)(A)