833 F.2d 1012
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Claude McQUEEN, Plaintiff-Appellant,
v.
Otis R. BOWEN, M.D., Secretary of Health & Human Services,
Defendant-Appellee.
 No. 86-1749.
 United States Court of Appeals, Sixth Circuit.
 Nov. 9, 1987.
 
 Before BOYCE F. MARTIN, Jr. and BOGGS, Circuit Judges and WISEMAN, Chief District Judge.*
 PER CURIAM.
 
 
 1
 Claude McQueen appeals the district court's order affirming the Secretary's decision to deny a period of disability and disability insurance benefits. After considering the parties' briefs and the record below, we conclude that the Secretary's decision is supported by substantial evidence. Accordingly, we affirm the order of the district court.
 
 
 2
 * McQueen is now 46 years old. Since 1963, he has worked as a janitor, packer, press operator and assembler for the automobile industry, and mail handler for the United States Postal Service. McQueen has completed school through the eleventh grade.
 
 
 3
 In August 1984, McQueen applied for disability insurance benefits since August 1983, claiming degenerative arthritis of the left knee, diabetes mellitus, hypertension and the lingering effects of a left ankle fracture.
 
 
 4
 The ALJ held that McQueen was not entitled to benefits. The ALJ determined that McQueen was suffering from "severe degenerative arthritis of the left knee," which "significantly limits [his] ability to perform basic work activities, such as extensive standing or walking." However, McQueen did not have an impairment or combination of impairments which met or equaled those in the listing of impairments in Appendix 1 to Subpart P of Part 404. 20 C.F.R. Sec. 404.1520(d). The ALJ further found that McQueen retained the residual functional capacity to perform sedentary work. Considering McQueen's work capacity, age, education, and prior work experience, the ALJ concluded that appellant was not disabled pursuant to Rule 201.24 of the medical vocational guidelines. 20 C.F.R. Sec. 404, Subpart P, Appendix 2.[1] The ALJ's decision was upheld by the Appeals Council, a magistrate and the district court.
 
 
 5
 Our review of the Secretary's decision is limited to determining whether it is supported by substantial evidence. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). A reviewing court "may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.1984) (citation omitted). "Even if the court might arrive at a different conclusion, the decision must be affirmed if supported by substantial evidence." Siterlet v. Secretary of Health and Human Services, 823 F.2d 918, 920 (6th Cir.1987) (citation omitted).
 
 II
 
 6
 McQueen contends that his left knee impairment meets or exceeds the impairment listed in section 1.13 of Appendix 1, supra, which reads as follows:
 
 
 7
 Soft tissue injuries of an upper or lower extremity requiring a series of staged surgical procedures within 12 months after onset for salvage and/or restoration of major function of the extremity, and such major function was not restored or expected to be restored within 12 months after onset.
 
 
 8
 He argues that "three (3) separate surgeries were performed and that the major function of [his] left lower extremity has not been restored."
 
 
 9
 Assuming that degenerative arthritis is solely a "soft tissue injury," McQueen's reliance on section 1.13 is misplaced. Section 1.13 is "directed at the loss of the use of one extremity, ... where restoration of function will require repeated staged surgical procedures over a lengthy period...." Waite v. Bowen, 819 F.2d 1356, 1359 (7th Cir.1987). There is substantial evidence in the record that McQueen has not lost the use of his left knee. Dr. Vincent Gallant examined McQueen in May 1984 and reported that he was able "to walk in a normal manner" with the aid of a walking cane, and that he "had no difficulty whatsoever in changing positions; namely, from sitting to standing, from sitting to lying and vice versa." In addition, the straight leg raising test was negative bilaterally and there was no evidence of any motor or sensory deficit in either lower extremity. The only performance limitations noted with respect to McQueen's left knee were a "loss of 30? on flexion" and difficulty squatting. Dr. Gallant concluded that there was only a "slight limitation of motion of the left knee joint...."
 
 
 10
 Dr. J. Pierre-Louis, an orthopedist, and Dr. P. Shah reached similar conclusions during examinations in September 1984 and January 1985, respectively. Dr. Pierre-Louis also indicated that despite some slight tissue swelling and crepitation, there was "full mobility" of the left knee. Dr. Ron Little, McQueen's treating orthopedist, noted that appellant had an antalgic gait, but did not need an external aid to walk. Accordingly, we conclude that the Secretary's determination that McQueen's knee impairment did not meet or exceed the impairment listed in section 1.13 is supported by substantial evidence.[2]
 
 III
 
 11
 McQueen attacks the ALJ's application of the medical vocational guidelines ("the grids"). First, he contends that the ALJ improperly applied the grids because he has a nonexertional impairment, which is his inability "to walk safely except over clean, dry, level surfaces."
 
 
 12
 McQueen is correct that the grids are not fully applicable when a claimant suffers from a nonexertional impairment such as an environmental restriction. Shelman v. Heckler, 822 F.2d 580, 585 (6th Cir.1987) (and cases cited therein); Damron v. Secretary of Health and Human Services, 778 F.2d 279, 282 (6th Cir.1985). In Kimbrough v. Secretary of Health and Human Services, 801 F.2d 794, 796 (6th Cir.1986), this court stated:
 
 
 13
 [T]he mere possibility of a nonexertional impairment is insufficient. Not even a minor nonexertional limitation is enough; the claimant must show an impairment that significantly limits his ability to do a full range of work at a designated level.
 
 
 14
 See also Cole v. Secretary of Health and Human Services, 820 F.2d 768, 772 (6th Cir.1987) ("The claim of nonexertional impairment must indicate a significant or severe limitation precluding the ability (in this case) to do sedentary work.").
 
 
 15
 The medical records in this case do not support McQueen's claim of a nonexertional impairment. We noted earlier that Dr. Little reported that McQueen did not need an external aid to walk; that Dr. Gallant observed appellant walking in a "normal manner" with such an aid. In addition, Dr. Pierre-Louis, who asked McQueen to walk without a cane, reported that appellant "could walk over [a] level surface without any assistive [sic] device, although he favors somewhat his left side and puts more weight on his right side." No physician's report has suggested the nonexertional impairment which is alleged here. Consequently, the ALJ properly decided to apply the grids.
 
 
 16
 Next, McQueen contends that the ALJ erroneously concluded that he has the residual functional capacity to perform a full range of sedentary work. Relying on Social Security Ruling 83-10,[3] McQueen argues that he is unable to stand or walk for "two hours of an 8-hour workday."
 
 
 17
 McQueen incorrectly assumes that sedentary work requires a two hour period of constant standing or walking, when in fact standing or walking may be rather intermittent throughout the workday. See Social Security Ruling 83-10 ("Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.") (emphasis added). In any event, there is substantial evidence to support the ALJ's conclusion. The orthopedic evidence establishes that McQueen suffers from degenerative arthritis of the left knee, with some mild atrophy of the left quadriceps. However, no physician has indicated that McQueen is unable to stand or walk for a total of two hours, or sit for six or more hours each day. Indeed, neither the treating nor examining physicians placed any limitations on his movement. Without reiterating the pertinent medical evidence discussed previously, we repeat Dr. Gallant's telling observation that McQueen "had no difficulty whatsoever in changing positions; namely, from standing to sitting, from sitting to lying down and vice versa." As late as January 1985, Dr. Shah reported that McQueen was able to heel and toe walk normally. In addition, McQueen's back and other extremities appear to be free from impairment. Physical examinations consistently revealed a normal range of motion of the cervical and lumbosacral spines, of all upper extremities, and of the right knee joint, without limitations or complaints of pain. There was also no evidence of any motor or sensory deficits in these areas.
 
 
 18
 Moreover, McQueen's left ankle fracture appears to present no adverse lingering effects. In December 1983, Dr. Little noted some decrease in range of motion. Subsequently, however, Dr. Pierre-Louis reported that both ankles, including the ligaments, appeared normal without localized tenderness, crepitation or deformity. Noting full mobility in the left ankle, he concluded that "it is quite evidence that [McQueen] has done a satisfactory recovery...." In January 1985, Dr. Shah reported that the left ankle's range of motion was normal.
 
 
 19
 Finally, there is substantial evidence supporting the ALJ's determination that McQueen's hypertension and diabetes mellitus do not pose a barrier to his performing sedentary work. The medical records document a history of only mild hypertension, without evidence of end organ damage. The diabetes mellitus was treated in October 1984, and there is no evidence that further control is needed.
 
 
 20
 Based on the foregoing, we are satisfied that the Secretary's decision that McQueen can perform a full range of sedentary work is supported by substantial evidence.
 
 
 21
 McQueen makes an additional argument, that the ALJ failed to consider the testimony by a vocational expert. The ALJ did not have to rely on this testimony once he determined that McQueen did not have a nonexertional impairment and his characteristics fit the grids. Siterlet, 823 F.2d at 922 (citations omitted) ("Since the appellant's characteristics fit the grid pattern, expert testimony was unnecessary to show a significant number of jobs in the economy, as the grids take the availability of jobs into account."). See also Cole v. Secretary of Health and Human Services, 820 F.2d 768, 771 (6th Cir.1987).
 
 
 22
 After reviewing the medical records, we agree with the district court that the ALJ's decision to apply, and his application of, the medical vocational guidelines, which directed a conclusion of not disabled pursuant to Rule 201.24, is supported by substantial evidence. Accordingly, the district court's order affirming the Secretary's denial of benefits is AFFIRMED.
 
 
 
 *
 The Honorable Thomas A. Wiseman, Jr., Chief United States District Judge for the Middle District of Tennessee, sitting by designation
 
 
 [1]
 The ALJ indicated that "[i]n view of [McQueen's] age and residual functional capacity, the issue of transferability of work skills is not material."
 
 
 [2]
 We note that McQueen has failed to produce medical evidence that a series of staged surgical procedures were performed within 12 months after the onset of the soft tissue injury. This is also fatal to his claim that he meets or exceeds the listing in section 1.13
 
 
 [3]
 Social Security Ruling 83-10 states in part: "Since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday."