861 F.2d 722
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Michael WAKLEY, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 87-1213.
 United States Court of Appeals, Sixth Circuit.
 Nov. 2, 1988.
 
 Before WELLFORD and BOGGS, Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Wakley appeals the granting of summary judgment to the Secretary on his claim for social security disability benefits. Wakley is 150 pounds overweight, and claims disability due to obesity, anxiety, hypertension, acute costochondritis (inflammation of the cartilage in the chest), hepatic inflammation due to alcohol consumption, thrombophlebitis and pain in his left leg. We affirm.
 
 
 2
 * Wakley was born on June 17, 1949, has a high school diploma, and has completed two years of community college. His relevant work experience has been as a gas station manager, an insulation installer, a truck driver, and a police officer. He claims that the onset of his disability occurred in 1979, when he stopped working. However, the injury that allegedly gave rise to the disability occurred in 1972.
 
 
 3
 Wakley filed an earlier disability claim, which was denied on June 2, 1981. This appeal concerns only his second application, which was filed on February 8, 1983.
 
 
 4
 The ALJ evaluated the evidence separately and in combination, finding that Wakley suffered from severe thrombophlebitis and could not return to his past employment, but retained the residual functional capacity to perform a limited range of sedentary work. The ALJ further found, on the advice of a vocational therapist, that there were a significant number of suitable jobs available in Wakley's vicinity. Thus, the ALJ found that Wakley was not disabled. The ALJ also mentioned in his opinion that he found Wakley's complaints of pain to be incredible when compared to the severity of his condition.
 
 
 5
 The district court affirmed the ALJ's determination, finding that the case was a close one in that the evidence could have supported a contrary finding. However, the court concluded that the ALJ's determination was supported by the evidence and affirmed the Secretary's denial of benefits.
 
 
 6
 The relevant facts are as follows. In 1972, Wakley was in a car accident, after which he began to develop blood clots in his leg. He had surgery and had no further problems until 1978, when he suffered a second injury to his leg. A subsequent venogram showed multiple venous abnormalities consistent with the obstruction of at least one major vein in Wakley's right calf. The doctors diagnosed thrombophlebitis and started anti-coagulant therapy.
 
 
 7
 Wakley claims to have suffered pain, swelling, and occasional hospitalizations since this incident. He says that he has tried to work once since this second injury, but otherwise, his activities have been severely limited. He was hospitalized four times between June 1981 and March 1984. March 1984 is the date upon which his insured status for purposes of disability benefits expired. Wakley was admitted to the hospital in August 1982, February 1983, and June 1983, each time for pain and swelling in his leg. On each visit, the condition resolved quickly with bed rest and/or medication. On June 1, 1983, Wakley was hospitalized with chest pains. The doctors could not identify the source, but Wakley is convinced that it was the result of a pulmonary embolism. No medical diagnosis confirms this. Instead, he was diagnosed as having acute costochondritis, hepatic inflammation because of alcohol consumption, hypertension and obesity.
 
 
 8
 Dr. Combs treated Wakley from June 1983 until January 1984 and confirmed this diagnosis. Dr. Balger, who saw Wakley on July 22, 1983, diagnosed brawny edema. Dr. Panayotou said that Wakley was disabled. Dr. Anderson, who saw Wakley from August 1982, to March 1983, diagnosed edema and said that Wakley was unemployable. He further stated that Wakley has to elevate his leg once an hour for 10 to 15 minutes, and that both sitting and standing aggravate the problem.
 
 
 9
 Dr. Swartz and Dr. Goswani examined Wakley for social security purposes. Dr. Swartz examined Wakley on August 15, 1983, and found swelling and tenderness. He opined that long-term relief would come from weight loss and exercise. Dr. Goswani saw Wakley two days later, and found swelling and edema, but no tenderness. He noted some pain on weight-bearing, and saw evidence of chronic venous insufficiency. He diagnosed chronic thrombophlebitis, obesity and hypertension.
 
 
 10
 Wakley admits that every doctor he has seen has told him that his condition would improve with weight loss and exercise. He says that he is afraid to exercise because he is convinced that it will cause a clot to form in, or move to, his heart, brain or lungs. This fear is not substantiated, according to his doctors.
 
 
 11
 At the hearing, a vocational expert testified that there were 47,000 semi-skilled and 20,000 unskilled jobs which Wakley could perform even if he had to elevate his leg periodically. These included clerk/receptionist, ticket seller, and small parts assembler. The Secretary admits that if Wakley's complaints are given full credence, he cannot work.
 
 
 12
 On July 12, 1984, the ALJ denied benefits. The Appeals Council affirmed this decision on November 11, 1984. The district judge found that the ALJ's decision was supported by the record, noting that a contrary decision could also be supported. He remarked that this was a very close case, but that he would not second-guess the ALJ in such a situation.
 
 II
 
 13
 On appeal, Wakley claims that the ALJ incorrectly weighed the evidence, as well as his credibility, in denying benefits. He claims that there is sufficient evidence to support a finding that he cannot work because he cannot find a job during which he can elevate his leg, which he claims is necessary to avoid further clotting and hospitalizations.
 
 
 14
 * In social security disability cases, the "ALJ's findings are not to be overturned unless there is no substantial evidence supporting such conclusions. 'Substantial evidence' means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Kirk v. Secretary of HHS, 667 F.2d 524, 535 (6th Cir.1981), cert. denied, 461 U.S. 957 (1983) (quoting Richardson v. Perales, 402 U.S. 389 (1971)). Further, as the trial judge noted, an "[a]dministrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." Baker v. Heckler, 730 F.2d 1147, 1150 (8th Cir.1984).
 
 B
 
 15
 To maintain a claim for disability benefits, a claimant must show that he is not engaged in substantial gainful activity; that he has an impairment; that the impairment is severe--i.e., that it significantly limits his ability to work; that the impairment can be expected to last at least twelve months; and that the impairment or combination of impairments meet an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; or that he is no longer able to perform his past relevant work, or, in the alternative, any other substantial gainful activity which exists in the national economy. Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.1984). The issue here concerns only the last element of the above analysis, whether Wakley can perform any substantial gainful activity. Ibid.
 
 
 16
 Thus, the court must determine whether there is substantial evidence to support the Secretary's finding that Wakley retains the residual functional capacity to perform some types of sedentary work, as the ALJ found and the Appeals Council and district court agreed. As the trial judge noted, this is a close case, but any uncertainties must be resolved in favor of the ALJ, who is "peculiarly suited to ... gauge the demeanor of the witnesses." Kirk, 667 F.2d at 537.
 
 
 17
 Wakley contends that his chronic thrombophlebitis, in conjunction with his obesity and associated discomforts, render him disabled to perform any work. When exertional and non-exertional impairments are alleged, as here, the Secretary cannot meet the burden of showing residual functional capacity by reference to the "grids," or medical vocational guidelines. Cole v. Secretary of HHS, 820 F.2d 768, 771 (6th Cir.1987). Wakley's allegations of pain establish the non-exertional impairment which renders the "grids" inapplicable. Thus, instead, the Secretary must show that the "claimant has the vocational qualifications to perform specific jobs ... which exist in the national economy." Cole, 820 F.2d at 771. This is usually done through testimony of a vocational expert. O'Banner v. Secretary of HEW, 587 F.2d 321, 323 (6th Cir.1978).
 
 
 18
 In the present case, the assessment of Wakley's credibility with respect to his complaints of pain is critical. The leading case in this jurisdiction on evaluating a claimant's credibility with respect to complaints of pain is Duncan v. Secretary of HHS, 801 F.2d 847 (6th Cir.1986). There, this court announced a two-part test for assessing subjective claims of pain. First, the court should determine if there is objective medical evidence of an underlying medical condition. Id. at 853. Here, there is an underlying medical condition; the existence of an ailment is not in dispute. However, the court must then determine "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain." Ibid. Here, it is not clear that Wakley's condition could account for the severity of the pain of which he complains. Although Wakley was treated with prescription pain medication at the onset of his disability, he now takes only Extra-Strength Tylenol.
 
 
 19
 This court has held that "credibility determinations with respect to subjective complaints of pain rest with the ALJ." Siterlet v. Health and Human Services, 823 F.2d 918, 921 (6th Cir.1987) (citing Kirk, 667 F.2d at 538). Although an ALJ may not use what is termed a "sit and squirm" test, "[s]ince the ALJ had the opportunity to observe the demeanor of the [claimant], his conclusions with respect to credibility 'should not be discarded lightly.' " Houston v. Secretary of HHS, 736 F.2d 365, 367 (6th Cir.1984) (citing Beavers v. Secretary of HEW, 577 F.2d 383, 387 (6th Cir.1978)).
 
 
 20
 Here, the ALJ found that Wakley's complaints were not credible. In his opinion, the ALJ stated that he had considered all of the evidence, and Wakley's impairments both alone and in combination. There is nothing in his opinion to indicate that he based his judgment on the way Wakley appeared to him during the hearing. Indeed, there are inconsistencies in Wakley's testimony which further support the ALJ's credibility determination. For example, Wakley testified that doctors have told him to stay off his feet and to avoid walking any more than necessary. Yet the doctor reports indicate that exercise has been suggested repeatedly. Thus, although another decisionmaker may have come to a different conclusion, there is no basis for overturning the ALJ's determination on this issue.
 
 
 21
 The voluminous medical evidence in this case includes a number of medical opinions by physicians. Three treating physicians' statements in the record, and opinions of numerous other physicians, indicate that these doctors thought that Wakley was disabled. However, they appear to have based their conclusions on their judgment that no employer would hire Wakley, not on his inability to perform. Although the opinion of a treating physician is to be given great weight, Houston v. Secretary of HHS, 736 F.2d 365, 367 (6th Cir.1984), a doctor's opinion is probative only when it is "based on sufficient medical data," ibid., and relates to areas within a doctor's expertise. In other words, when a doctor testifies about the availability of jobs, or the employability of a particular person, he is not giving a medical opinion at all, and his judgment is not based on his medical expertise. "[T]he ultimate determination of disability rests with the Secretary, not with the treating physician. Accordingly, the Secretary is not bound by a treating physician's conclusory statement." Duncan v. Secretary of HHS, 801 F.2d 847, 855 (6th Cir.1986) (citations omitted).
 
 
 22
 The strongest evidence supporting the ALJ's decision is the testimony of the vocational expert. In response to a hypothetical question, the expert testified that even if Wakley had to elevate his leg once an hour for ten minutes, there were thousands of jobs in Wakley's area which he could perform, including clerk/receptionist, ticket seller, or small parts assembler.
 
 
 23
 This is not a case like Howse v. Heckler, 782 F.2d 626, 628 (6th Cir.1986), or Wages v. Secretary of HHS, 755 F.2d 495, 498 (6th Cir.1986), in which a claimant must be allowed to alternate between sitting and standing, rendering the claimant unable to perform sedentary work. Instead, this case is more like Lacy v. United States, No. 85-1915 (6th Cir.1987) (unpublished opinion), in which this court said that when a claimant's impairment makes it necessary to sit and stand alternately, and when a vocational expert takes this necessity into account and still maintains that there are jobs available that can accommodate that limitation, the ALJ has complied with required procedures, and can deny benefits on the basis of the vocational expert's testimony.
 
 
 24
 It is clear that many of Wakley's symptoms would be alleviated through diet and exercise. However, Wakley claims to be afraid of exercising because he is convinced that a clot would move to his heart, brain or lung and kill him. There is no medical support for his fear.
 
 
 25
 In Awad v. Secretary of HHS, 734 F.2d 288, 290 (6th Cir.1984), a claimant refused to follow the suggested course of treatment because of medically unfounded fears. This court found that unfounded fears were not a good reason to avoid curative treatment, and upheld the Secretary's denial of benefits. Ibid. Thus, Wakley's fears will not excuse his failure to try to improve his condition. Although Wakley is not required to attempt a course of treatment which has not been prescribed formally, 20 C.F.R. Secs. 404.1530, 416.930, his refusal to attempt to alleviate his condition undermines his assertion that he is willing to pursue any treatment, including such drastic measures as amputation, to relieve his pain.
 
 
 26
 Clearly, the trial judge was correct in commenting that this is a close case. The vocational expert's testimony and the ALJ's determination regarding credibility support his decision to deny benefits; the doctors' conclusory statements are to the contrary. However, because the ALJ's decision after weighing the evidence is supported by substantial evidence, we AFFIRM.