887 F.2d 265
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
James E. NICELY, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 89-1070.
 United States Court of Appeals, Sixth Circuit.
 Oct. 16, 1989.
 
 Before DAVID A. NELSON and RYAN, Circuit Judges, and RONALD E. MEREDITH, District Judge.*
 PER CURIAM.
 
 
 1
 This is a social security disability case in which the plaintiff, James E. Nicely, sought judicial review of the Secretary's decision to deny his application for benefits. Mr. Nicely claims that he has been unable to work since April 22, 1985, because of coronary artery disease. The district court entered summary judgment in favor of the Secretary. Finding that the Secretary's decision was supported by substantial evidence, we shall affirm the district court's judgment.
 
 
 2
 * * *
 
 
 3
 * * *
 
 
 4
 Mr. Nicely was born on April 3, 1942. He completed two years of high school and is able to read and write. He worked for General Motors from 1974 to 1985, most recently on the assembly line. He is receiving a disability pension from General Motors.
 
 
 5
 Mr. Nicely filed his first application for disability insurance benefits on October 10, 1985, claiming disability because of coronary artery disease, back injury, and arthritis. This application was denied after a hearing before an Administrative Law Judge. Mr. Nicely did not seek judicial review.
 
 
 6
 Mr. Nicely filed his current application on November 10, 1986. It too was denied after a hearing before an Administrative Law Judge. Under the doctrine of administrative res judicata, Mr. Nicely is barred from recovering any benefits for the period before April 16, 1986, the date on which the first application was denied. With respect to the application for benefits after that time, the question to be decided is whether the findings of the second ALJ are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 401 (1971).
 
 
 7
 * * *
 
 
 8
 * * *
 
 
 9
 Mr. Nicely first argues that he suffers from severe ischemic heart disease and chest pain of cardiac origin, and while he "may not exactly meet the [listing at 20 C.F.R. Part 404, Subpart P, Appendix 1, Sec. 4.04 (1988) ], he certainly equals it considering his clinical course and objective medical evidence." In the alternative, he argues that he retains no residual functional capacity.
 
 
 10
 Mr. Nicely was hospitalized in February of 1982 with complaints of chest pain. He had a coronary bypass operation in March of that year to alleviate 80-percent blockage in his left anterior descending coronary artery. He was "doing well" at the time of discharge.
 
 
 11
 Mr. Nicely was hospitalized again from April 25 to 27, 1985, after experiencing substernal chest discomfort. Although tests showed no evidence of a myocardial infarction, a stress test was positive for ischemic ST depression. A cardiac catheterization was performed in April of 1985, at which time the graft to the left anterior descending artery was completely occluded. The artery itself revealed 60 percent to 80 percent narrowing at its mid-portion.
 
 
 12
 In May of 1985, after reviewing the results of the cardiac catheterization, Mr. Nicely's cardiologist, Creagh Milford, D.O., advised that Mr. Nicely could return to work at the treating physician's discretion, with certain restrictions. (No lifting of weights over 15 pounds, no work beyond 40 hours per week, no work at temperatures above 90 degrees, and, preferably, no work on an assembly line.)
 
 
 13
 A stress test conducted in September of 1985 showed minimal nonspecific changes, but it was stopped short of completion because of Mr. Nicely's general fatigue and shortness of breath. On September 23, 1985, Dr. Milford again indicated that Mr. Nicely could eventually return to work as long as the restrictions earlier noted were honored.
 
 
 14
 Subsequent examinations undertaken for General Motors found Mr. Nicely unable to return to work. Continuation of his disability status was recommended for periods of at least two weeks (October 1985); four weeks (January 1986); and twelve weeks (September 1986). On September 5, 1986, Dr. Milford gave General Motors a report noting the occlusion of the bypass graft, as well as angina. Dr. Milford indicated that Mr. Nicely was disabled from his regular employment or any occupation.
 
 
 15
 In a letter of August 18, 1986, Dr. Milford opined that Mr. Nicely was totally and permanently disabled. On November 18, 1986, Dr. Milford noted that the chest pains had decreased since Mr. Nicely had limited his activity, but the doctor said that if Mr. Nicely followed a normal routine he would experience shortness of breath and episodes of chest pain. On March 30, 1987, Dr. Milford indicated that Mr. Nicely had experienced episodes of chest pain "several times a day." He attached a positive stress test, performed February 4, 1987. In a letter dated May 6, 1987, Dr. Milford repeated his opinion that Mr. Nicely was permanently and totally disabled from all types of employment. As with his earlier opinions, Dr. Milford stated this one in conclusory form.
 
 
 16
 The medical evidence does not necessarily support Dr. Milford's opinions. In March 1986, Mr. Nicely reached 6 METS during treadmill exercise with .7 to 1.2 mm ST-wave depression. In February 1987, he reached 8 METS with no ST-wave depressions indicative of ischemia. The later treadmill test reflected an improvement, not a deterioration, in his condition. Given the res judicata effect of the ALJ's decision on April 16, 1986, this fact undercuts Mr. Nicely's assertion that his condition has deteriorated.
 
 
 17
 The x-ray evidence reflected an improvement in Mr. Nicely's condition. In September of 1986, x-rays taken by Dr. Lal Banerji, M.D., revealed evidence of left ventricular hypertrophy, albeit without pulmonary congestion; by August of 1987, however, an x-ray of Mr. Nicely's chest taken by Dr. Joseph Kopmeyer, M.D., was normal except for evidence of the bypass surgery. Dr. Kopmeyer reported that a resting EKG revealed evidence of mild ischemia.
 
 
 18
 Mr. Nicely also testified to various subjective complaints, including disabling chest pain and fatigue. But there are numerous discrepancies between this testimony and the record the ALJ considered when he made his credibility finding. Mr. Nicely testified that he was hospitalized in 1985 because of a stroke; yet the record reflected that he was hospitalized for only two days because of his subjective complaints. He said that he had pain with exertion and while resting; yet he repeatedly told his doctors that his pain occurred only with exertional activities. He testified that he had chest pain two to three times daily for which he took nitroglycerin 75 percent of the time; yet he told Dr. Banerji that he took nitroglycerin 15 to 20 times each month. He alleged chest pain during treadmill exercise testing in February of 1987; yet the allegation was not corroborated by the EEG.
 
 
 19
 These facts tend to undercut Dr. Milford's changed medical opinion concerning Mr. Nicely's ability to return to work. It is apparent that Dr. Milford's opinions were primarily based upon Nicely's subjective complaints. A claimant's subjective allegations of disabling pain are insufficient by themselves to support a claim for benefits. Sizemore v. Secretary of Health and Human Servs., 865 F.2d 709, 713 (6th Cir.1988) (per curiam). The ALJ was not required to defer to Dr. Milford's medical opinion if the opinion was not based on sufficient medical data. See Harris v. Heckler, 756 F.2d 431, 435 (6th Cir.1985). Despite his subjective complaints, Mr. Nicely was able to engage in activities that indicated he was not totally disabled. He could take care of his personal needs and sometimes helped with light housework. He was able to hunt and fish, and he attended church services three times a week. Cf. Sizemore, 865 F.2d at 713 (plaintiff's activities suggested claims of disabling pain were not credible); Siterlet v. Secretary of Health and Human Servs., 823 F.2d 918, 921 (6th Cir.1987) (per curiam) (plaintiff's wide range of activities supported finding that he could engage in full range of sendentary work).
 
 
 20
 Given the discrepancies in the evidence, Mr. Nicely's range of daily activities and hobbies, and the objective evidence of only mild ischemia, there was substantial evidence for the ALJ to regard the plaintiff's subjective complaints as exaggerated and to find that he retained the residual functional capacity for a restricted range of sedentary work.
 
 
 21
 * * *
 
 
 22
 * * *
 
 
 23
 Mr. Nicely also argues that the ALJ based his finding of restricted residual functional capacity on an incomplete hypothetical question to the vocational expert. The question failed to take into account Mr. Nicely's claim of severe fatigue and the climate restriction.
 
 
 24
 Mr. Nicely failed to prove his subjective complaints were so severe as to require him to lie down during the day, and the ALJ therefore did not have to include this aspect of Mr. Nicely's claim in his hypothetical. The only evidence of a need for climate control was Dr. Milford's 1985 opinion, which related to the prior claim. No such evidence was offered with respect to the current claim, and the ALJ did not reopen the prior claim. Furthermore, the Secretary argues correctly that the 90-degree limitation, as a matter of common sense, has an insignificant effect on the number of available jobs. This fact is "within the common knowledge and experience of ordinary men, and requires no substantiation by a vocational expert." McLamore v. Weinberger, 538 F.2d 572, 575 (4th Cir.1976). The ALJ thus did not have to include this aspect in his question to the vocational expert. Varley v. Secretary of Health and Human Servs., 820 F.2d 777, 779-80 (6th Cir.1987).
 
 
 25
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Ronald E. Meredith, United States District Judge for the Western District of Kentucky, sitting by designation