**Donald S. HENDRIGSMAN, Plaintiff,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.**

No. C–1–94–159.

United States District Court,
S.D. Ohio,
Western Division.

May 5, 1995.

Mark David Eckerson, Milford, OH, for plaintiff.

James Evan Rattan, U.S. Attorney's Office, Columbus, OH, for defendant.

## ORDER

ALAIMO, District Judge, Sitting by Designation.

This matter is before the Court upon the objections by the defendant, the United States Department of Health and Human Services (the Secretary), to the report and recommendation issued by the United States Magistrate Judge (Steinberg, mag.). (Doc. No. 12). On May 4, 1995, a hearing was held on these objections. For the reasons set forth, herein, the Secretary's objections to the magistrate judge's report and recommendation are well taken.

### I. Factual and Procedural Background

Plaintiff Donald Hendrigsman (Hendrigsman) was born October 30, 1953. (Doc. No. 9 at 2). He completed high school. (Doc. No. 9 at 2). Hendrigsman last worked September 18, 1985, as a warehouseman, loading and unloading trucks. (Doc. No. 9 at 2). He asserted he had to leave his job because of severe lower back and leg pain, diabetes, and hypertension. (Doc. No. 6, Tr. 13 and 50).

On May 4, 1992, Hendrigsman filed for Social Security Disability Insurance (SSDI) benefits, requesting benefits from September 18, 1985. (Doc. No. 6, Tr. at 11 and 50). On July 21, 1992, the Social Security Administration determined that Hendrigsman was not entitled to disability benefits. (Doc. No. 6, Tr. at 54). On August 12, 1992, Hendrigsman appealed this determination. (Doc. No. 6, Tr. at 54). On November 20, 1992, the Social Security Administration found that the previous determination denying Hendrigsman's claim was proper under the law. (Doc. No. 6, Tr. at 59).

On January 14, 1993, Hendrigsman requested a hearing before the administrative

law judge (ALJ). (Doc. No. 6, Tr. at 10). On May 24, 1993, such hearing was held in Cincinnati, Ohio. (Doc. No. 6, Tr. at 26). At the hearing, Hendrigsman presented evidence of hypertension, lower back and leg pain and diabetes. (Doc. No. 6, Tr. at 26–43). In addition, the ALJ engaged in the following colloquy with the testifying vocational expert (VE):

> ALJ: .... I'd like to ask you if, in your opinion, ... there were substantial existing jobs that [Hendrigsman] ... could do in the economy as it was in December of 1990 under this hypothetical[:] He could do a full range of sedentary work with these limitations. He cannot work in high humidity. He can do virtually no bending.... He must be able to alternate sit/stand at will. He was able to sit 20 minutes at a stretch and stand for about the same length of time but it would either have to be at will or if it were a job paced change of position, it would have to be of comparable frequency. He must have a boss who's either enlightened enough ... to let him lie down out of the way at lunchtime and plug in his heating pad and lie on it.... He would miss one day, an average of one day per month to take care of his pain. He has what his doctor called borderline IQ. He is able to read the daily newspaper but the work must be in line with his intellectual abilities.... His understanding and memory were fair. His social interaction and adaptation were fair. Under these limitations, do you have any jobs for him in the 1990 economy.

> \* \* \* \* \* \*

> VE: Possibility would be a position of— these are unskilled, position of cashier 2. My opinion, approximately 25 percent of these jobs would allow a person to eventually [sit] or stand, at will. That would be approximately 1,100 locally, 180,000 nationally.

> \* \* \* \* \* \*

> ALJ: Now your 1,100 and 180,000, is that before or after eliminating 75 percent?

> VE: No, the 1,100 would ... be after eliminating.

> ALJ: Okay. Anything else?

> VE: Another possibility would be surveillance system monitor, especially a position of watching TV monitors to watch activity in office buildings and so forth....

> ALJ: .... Okay, what are the numbers?

> VE: There are only approximately 25 of those locally, 20,000 nationally....

> \* \* \* \* \* \*

> VE: Another possibility would be machine tender type positions where basically the person is observing the operation of the machine where you simply have to push a button or a switch to turn it on and off but mainly it's observing the activities of the machine and would call somebody else in if a malfunction took place.

> \* \* \* \* \* \*

> ALJ: The approximately 750 locally, 400,000 nationally.

> \* \* \* \* \* \*

> ALJ: Okay. Tell me, in your review of the file, did you notice any severe limitations on him that I didn't, that I didn't account for in the hypothetical?

> VE: No, in fact, the major one that ... I saw was Exhibit 11, ... where my records indicated the ability to [sit] was okay, to stand and walk okay, lift, carry, was 20 pounds, handling[.]

(Doc. No. 6, Tr. at 16–20). On July 29, 1993, the ALJ issued his decision. (Doc. No. 6, Tr. at 15). The ALJ found that Hendrigsman "had a chronic lumbosacral strain resulting in low back pain and occasional left leg pain, but that he does not have an impairment or combination of impairments listed in, or medically equal to one listed in [the Secretary's Listing of Impairments]." [1] (Doc. No. 6, Tr. at 14). The ALJ concluded that, although Hendrigsman's back pain testimony was

---

1. The ALJ also found that Hendrigsman's hypertension and diabetes mellitus "were not severe within the meaning of 20 [C.F.R. § ] 404.21 during the above time period." (Doc. No. 6, Tr. at 12).

credible in nature, he could, nonetheless, still perform certain sedentary work activity:

The undersigned finds that the claimant's testimony concerning his low back pain and left leg is credible in nature. Nevertheless, the undersigned believes that the claimant would be capable of performing "sedentary" work activity involving a sit/ stand option without the risk of compromising his pain.

(Doc. No. 6, Tr. at 14). The ALJ, thus, denied Hendrigsman's claim for disability benefits. (Doc. No. 6, Tr. at 15). On January 4, 1994, the appeals council held there was no basis for reviewing the ALJ's decision. (Doc. No. 6, Tr. at 2). The ALJ's decision, thus, became the final decision of the Secretary for judicial review purposes. (Doc. No. 6, Tr. at 3). Hendrigsman commenced his federal civil case against the Secretary on March 3, 1994. (Doc. No. 1).

Some nine months later, the magistrate judge issued his report and recommendation that the Court remand this action back to the Secretary for further proceedings. (Doc. No. 11). The magistrate judge found the vocational expert's testimony too qualified and generalized to "constitute substantial evidence of a significant number of jobs that [Hendrigsman] can perform." (Doc. No. 6, Tr. at 9). The Magistrate Judge further found "serious doubt" that the jobs identified by the vocational expert took into account all the specified limitations enumerated by the ALJ. (Doc. No. 11 at 9). He also found that the ALJ failed to discredit Hendrigsman's testimony as to whether plaintiff had the residual functional capacity to perform any work within the 1990 national economy.[2] (Doc. No. 11 at 11). The case is now before the Court on the Secretary's objections to the magistrate judge's report and recommendation. (Doc. No. 12).

## II. DISCUSSION

### a.) Applicable Law

#### 1.) Standard of Review

Pursuant to Fed.R.Civ.P. 72(b), ¶ 2, "the district judge to whom the case is assigned shall make a de novo determination ... of any portion of the magistrate judge's disposition to which specific written objection has been made...."

■ Judicial review of the Secretary's final decision is limited to determining whether the Secretary's findings are supported by substantial evidence and whether the Secretary employed the proper legal standards by reaching her conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). The Sixth Circuit has defined substantial evidence as more than a scintilla of evidence and as such evidence as a reasonable mind might accept as adequate to support a conclusion. *Kirk v. Secretary of Health and Human Servs.,* 667 F.2d 524, 535 (6th Cir.1981), *cert. denied,* 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983). It is not for the Court to try a case *de novo,* nor resolve conflicts in evidence, nor decide questions of credibility. *Garner v. Heckler,* 745 F.2d 383, 387 (6th Cir.1984).

#### 2.) SSDI Statutory and Regulatory Framework

To qualify for SSDI benefits, a claimant must be under the age of 65 and have established the existence of a disability prior to the expiration of his insured status. 42 U.S.C. § 423(a) and (c); 20 C.F.R. Part 404; *See Moon,* 923 F.2d at 1182. SSDI regulations define the term disability as the inability to do any substantial gainful activity by reason of any severe medically determinable physical or mental impairment which can either be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 20 C.F.R. § 404.1505. An individual is found disabled if his impairment is so severe as to prevent him from doing his previous job, as well as any other substantial gainful activity[3] in the national economy, considering such person's age, education, work experience and

---

2. The 1990 national economy job numbers are the appropriately-cited one with respect to this case, as Hendrigsman's SSDI insured status expired December 31, 1990. *Moon v. Sullivan,* 923 F.2d 1175, 1182 (6th Cir.1990).

3. Substantial gainful employment is generally defined as work which earns the individual at least $500 per month. *See* 20 C.F.R. § 404.1510.

residual functional capacity.[4] 20 C.F.R. § 404.1505.

SSDI regulations set forth a sequential evaluation process to determine whether a claimant is disabled for SSDI benefit purposes. 20 C.F.R. § 404.1520. A claimant must satisfy all steps in the sequential process to be deemed disabled. *See Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir.1988). First, the individual must not be engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). Second, the person must have a severe medical or mental impairment, as described, *supra.* 20 C.F.R. § 404.1520(c). If the person has a severe medical or mental impairment which equals or exceeds the criteria outlined in the Secretary's listing of impairments, the individual is presumed disabled for benefit purposes. 20 C.F.R. Part 404, Subpart P, Appendix 1. If the individual's impairment is not within such listing, the individual is still deemed disabled if, as the result of the impairment, the individual is unable to return to his previous work or perform other substantial gainful employment which exists in significant numbers in the national economy, taking into account the person's age, education, work experience and residual functional capacity. 20 C.F.R. § 404.1520(f). The claimant has the burden of proof during most of the sequential evaluation; however, the Secretary has the burden to show that the claimant can perform work in the national economy. *See Lashley v. Secretary of Health and Human Services*, 708 F.2d 1048 (6th Cir.1983). If the claimant cannot work more than six hours per shift and requires a sit/stand option, the Secretary must adduce testimony from a vocational expert to satisfy its burden. *Born v. Secretary of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir.1990). A vocational expert's testimony can constitute substantial evidence to support the Secretary's finding that a claimant is capable of performing a significant number of jobs in the economy, as long as the vocational expert's testimony is in response to an ALJ's hypothetical question that accurately portray's claimant's abilities. *Bradford v. Secretary of Dep't of Health and Human Servs.*, 803 F.2d 871, 874 (6th Cir.1986) (*per curiam* ).

At all times pertinent, Hendrigsman was under the age of 65 and met the insured status requirements for SSDI benefits.[5] (Doc. No. 6, Tr. at 14). He was not engaged in substantial gainful employment during the time of his alleged disability. (Doc. No. 6, Tr. at 14). He had a severe physical impairment, namely a chronic lumbosacral strain resulting in low back pain and occasional left leg pain. (Doc. No. 6, Tr. at 14). His impairment did not equal or exceed an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Doc. No. 6, Tr. at 14). However, Hendrigsman's impairment precluded him from returning to his previous work. (Doc. No. 6, Tr. at 14). These points are not contested.

Rather, the Secretary timely objects to the magistrate's findings that: (1) the vocational expert's testimony was too qualified and generalized to "constitute substantial evidence of a significant number of jobs that [Hendrigsman] can perform;" (2) there was "serious doubt" that the jobs identified by the vocational expert took into account all the specified limitations enumerated by the ALJ; and (3) the ALJ failed to discredit Hendrigsman testimony as to whether plaintiff had the residual functional capacity to perform any work within the national economy. (Doc. No. 11).

#### b.) Case At Hand

■ Defendant's objections are well taken. First, although the vocational expert testified as to the "possibilities" of jobs in the national economy, it was entirely reasonable for the ALJ to conclude that the vocational expert was testifying as to employment options or alternatives in the national economy. Taking

---

**4.** Residual functional capacity is one's capacity to perform work-related physical or mental activities in spite of functional limitations resulting from such individual's impairment. *See* 20 C.F.R. § 404.1545; *Cohen v. Secretary of Health and Human Servs.*, 964 F.2d 524, 530 (6th Cir. 1992).

**5.** Specifically, Hendrigsman states he became disabled in September of 1985. (Doc. No. 6, Tr. at 14). His insured status expired December 31, 1990. (Doc. No. 6, Tr. at 14).

the vocational expert's testimony to signify options and alternatives, rather than vast qualified or generalized possibilities, there, thus, existed substantial evidence upon which the ALJ could conclude that Hendrigsman could handle a significant number of jobs within the 1990 national economy, namely, some 1,800 locally and 600,000 nationally. (Doc. No. 6, Tr. at 15).

■ Second, the ALJ reasonably construed the vocational expert's testimony to be a full response to the ALJ's hypothetical as to all of Hendrigsman's perceived specified limitations. The vocational expert reduced 1990 job numbers by 75 percent to take into account Hendrigsman's specified condition.[6] (Doc. No. 6, Tr. at 16–20). The ALJ asked the vocational expert whether his hypothetical took into account all of Hendrigsman's severe limitations. (Doc. No. 6, Tr. at 43–47). The vocational expert replied that it had. (Doc. No. 6, Tr. at 43–47). Admittedly, the ALJ did not formalistically, specifically query as to whether the vocational expert took into account all of the exact and specified limitations enunciated. (Doc. No. 6, Tr. at 43–47). Nevertheless, the above exchange still permitted the ALJ to reasonably conclude that the vocational expert's responses were based upon all facets of the hypothetical.[7] The Secretary's objections on this point are, thus, well noted.

■ Third, the ALJ reasonably found that, despite Hendrigsman's testimony being credible in nature, he could do a significant number of jobs in the 1990 economy. (Doc. No. 6, Tr. at 14). It is well settled that credibility determinations regarding a claimant's subjective complaints rest with the ALJ. See Siterlet v. Secretary of Health and Human Servs., 823 F.2d 918, 920 (6th Cir. 1987) (per curiam). In the case at hand, the ALJ was required to make a determination as to the extent of Hendrigsman's back pain. (Doc. No. 6, Tr. at 14). The ALJ concluded that Hendrigsman's back pain was severe enough to preclude his returning to his previous employment. (Doc. No. 6, Tr. at 14). Nonetheless, the ALJ concluded that the testimony revealed that Hendrigsman could still perform a significant number of jobs in the national economy. (Doc. No. 6, Tr. at 14). There was substantial evidence to support this ALJ's findings. The record showed that Hendrigsman could sit, stand, walk, lift up to 20 pounds, carry up to 20 pounds, handle objects, make change, hear, speak, travel, and had fair understanding and memory capabilities. (Doc. No. 6, Tr. at 95). The record further related that there were some 1,800 jobs locally and 600,000 nationally that would accommodate Hendrigsman's physical and mental limitations. (Doc. No. 6, Tr. at 16–20). The Court, therefore, finds it was reasonable for the ALJ to conclude that Hendrigsman's testimony was "credible in nature," but that he was still "capable of performing 'sedentary' work activity involving sit/stand option with the risk of compromising his pain." (Doc. No. 6, Tr. at 14). The Secretary's objections on the magistrate judge's findings to the contrary are, therefore, well taken.

### III. CONCLUSION

The Court finds the Secretary' objections to the magistrate judge's report and recommendation well taken. The Court finds the Secretary's final decision denying Hendrigsman SSDI benefits to be in accordance with the law and supported by substantial evidence in the record. Accordingly, Hendrigsman's action is DISMISSED WITH PREJU-

---

6. Hendrigsman finds convincing the vocational expert's later testimony that, if an employer specifically knew of all of Hendrigsman's limitations and requirements, Hendrigsman would probably not be given work. (Doc. No. 6, Tr. at 48). This court finds otherwise. First, the talisman to the determination of disability is not whether Hendrigsman would be hired, but, rather whether there were a significant number of jobs within the national economy claimant could perform during the time at issue. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1566(c). Sec-

ond, this Court vehemently declines to impute constructive incentives to employers who refuse to grant reasonable accommodations to individuals with disabilities, in violation of the Americans with Disabilities Act, Pub.L. 101–336, 104 Stat. 328 (1990), 42 U.S.C. § 12101, et seq.

7. While the ALJ could have more fully developed the record on this question, there is hardly any administrative or judicial record or opinion which could not be more thoroughly developed.

DICE. The Clerk is directed to enter an appropriate Judgment of Dismissal.

IT IS SO ORDERED.