Aileen BURTON, Plaintiff–Appellee,

v.

SECRETARY OF HEALTH AND HU-
MAN SERVICES,
Defendant–Appellant.

No. 89–3283.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 13, 1989.

Decided Jan. 9, 1990.

Philip E. Fay (argued), Greenup, Ky., for plaintiff-appellee.

Edward P. Studzinski, Michael E. Kerpan (argued), Dept. of Health and Human Services, Office of the General Counsel, Region V, Chicago, Ill., Joseph E. Kane, Asst. U.S. Atty., Columbus, Ohio, for defendant-appellant.

Before MERRITT, Chief Judge; KENNEDY, Circuit Judge; and McRAE, Senior District Judge.*

MERRITT, Chief Judge.

This is an appeal from the District Court's judgment reversing the Secretary's denial of claimant's application for disability benefits under the Social Security Act, 42 U.S.C. §§ 301 *et seq.* For the reasons stated below, we reverse.

---

* The Honorable Robert M. McRae, Jr., Senior District Judge for the United States District Court for the Western District of Tennessee, sitting by designation.

## I.

The claimant, Aileen Burton, worked for 16 years as a salesperson-cashier in clothing stores. She has an eighth grade education. At the time of her hearing on October 7, 1986, before an administrative law judge of the Department of Health and Human Services, she was 58 years old. Ms. Burton left her employment on January 26, 1986, alleging that she was disabled due to psychological problems, high blood pressure, and phlebitis. The Secretary denied the application both initially and upon reconsideration. Ms. Burton requested and received a hearing before an administrative law judge, who received a variety of evidence, including testimony from the claimant and a vocational expert.

In October of 1983, prior to her claim for benefits, Ms. Burton complained of pain in her right leg, for which she was prescribed an anticoagulant. She also stated that she could not sit for more than 1½ hours or stand for more than ½ hour without great discomfort. In April of 1986, doctors hospitalized her for "nerves," prescribing medication to combat chronic and acute depression. Doctors also treated her for high blood pressure and arthritis of the spine.

A vocational expert at the hearing classified Ms. Burton's background as involving exertionally light, skilled work.[1] Basic mathematical calculations, customer relations, making precise measurements in fitting clothes, and categorizing merchandise for inventory and pricing were among the skills that she had acquired. In light of her physical and mental impairments, the vocational expert testified, Ms. Burton could no longer do her usual sales-cashier work because of the prolonged standing, but her acquired skills were transferable to sedentary self-service cashier work without the need for vocational adjustment.

Considering the testimony of the vocational expert, doctors, and mental health professionals, the ALJ ruled that Ms. Burton's phlebitis prevented her from performing her past work. She could, however, without vocational adjustment, transfer her cashier's skills to a significant number of jobs, including sedentary work as a self-service gas station cashier. Accordingly, while recognizing that Ms. Burton's mental impairments limited her capacity for maintaining a steady schedule and for getting along with others, the ALJ found that she was "not disabled" within the meaning of the Social Security Act.

Ms. Burton subsequently filed an action in federal district court for review of the Secretary's decision. After hearing oral argument and considering the magistrate's report and recommendation, District Judge Carl B. Rubin entered a judgment reversing the Secretary's decision. From that judgment the Secretary appeals.[2]

## II.

We evaluate Ms. Burton's claim under the five familiar criteria found in 20 C.F.R. § 404.1520 (1989), which in this case impose on the Secretary the burden of showing that there is substantial work in the national economy which the claimant can perform. If the claimant suffers only from an exertional limitation, then the Secretary may carry his burden by applying the grid pursuant to 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e) (1989). If, as in this case, the claimant suffers from an additional nonexertional impairment that restricts performance of a full range of work, then the Secretary may use the grid as a framework for decision, but must rely on other evidence to carry his burden. *See Damron v. Secretary of Health & Human Servs.*, 778 F.2d 279 (6th Cir.1985). The other

1. Ms. Burton asks this Court to reverse the District Court's decision because a hypothetical question asked of the vocational expert at the hearing did not properly assess her mental impairment. Because the evidence on which Ms. Burton would like to rely—Dr. Albrecht's testimony—was not offered until after the hearing, a challenge to the "fairness" of the hypothetical should fail.

2. Pursuant to 28 U.S.C. § 636(b)(1)(C), the District Court made a *de novo* determination of the challenged portions of the magistrate's findings. The magistrate's findings in turn are controlled by 42 U.S.C. § 405(g), which requires that the magistrate consider whether the record as a whole contains substantial evidence to support the Secretary's decision.

evidence that the Secretary relied on here was the vocational expert's testimony that Ms. Burton acquired transferable skills in her years as a salesperson-cashier. Because she is of advanced age—over 55—the Secretary must show that she possesses skills that are directly transferable to sedentary work. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(f) (1989) ("[i]n order to find transferability of skills to skilled sedentary work for individuals who are of advanced age ... there must be very little, if any, vocational adjustment required...."); *Weaver v. Secretary of Health & Human Servs.*, 722 F.2d 310, 312 (6th Cir.1983); *see also Varley v. Secretary of Health & Human Servs.*, 820 F.2d 777, 781–82 (6th Cir.1987) (Secretary will not consider claimant who is over 55 to be able to adjust to sedentary work unless claimant possesses highly marketable skills). The transferability of skills depends largely on the similarity of work activities among the previous and suggested jobs. *See* 20 C.F.R. § 404.1568(d)(1)–(3) (1989).

According to the District Court, Ms. Burton's past work involved only an aptitude common to most persons such as the ability to see, think, use judgment, or use one's hands. *See Ellington v. Secretary of Health & Human Servs.*, 738 F.2d 159, 161 (6th Cir.1984) (transferable skills "refer to learned abilities which combine knowledge with coordinated physical movements, such as operating a typewriter, or a learned mental discipline, or an area of expertise"). To be transferable, skills must be acquired and must relate to specific work activities. *See* 20 C.F.R. § 404.1565(a) (1989) (defines work experience as "skills and abilities you have acquired through work which show the type of work you may be expected to do").

The crux of the magistrate's findings on which the District Court relied is that Ms. Burton's prior work was unskilled, and therefore, she is disabled under Grid Rule 201.01. In the alternative, if Ms. Burton had acquired skills as a cashier, the magistrate wrote, then the skills were not transferable, thus she is disabled under Grid Rule 201.02. The magistrate questioned the ALJ's characterization of cashier work. The ability to make basic mathematical calculations, use elementary tact in dealing with customers, make measurements for fitting clothes, and mark items for inventory and pricing led the ALJ to find that Ms. Burton possessed a bundle of transferable, acquired skills. According to the magistrate, however, these require only judgment, not skill. We disagree.

III.

The disability determination is made in light of the realities of the job marketplace. By imposing upon claimants unable to perform their past work the requirement that they possess transferable skills, the regulations avoid unduly burdening the unskilled and the elderly, both of whom are unlikely to succeed in finding a new line of work on the job market. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2 (1989). With this underlying policy in mind, the Secretary's determination of disability includes an assessment of the skills (if any) involved in the claimant's past work, and whether those skills are transferable to a significant number of existing jobs which the claimant can perform. *See* 20 C.F.R. §§ 404.1565–.1568 (1989).

Several decisions of this Court and other Courts of Appeals have held that cashier's skills are transferable. In *Siterlet v. Secretary of Health & Human Servs.*, 823 F.2d 918, 922 (6th Cir.1987), we upheld the Secretary's decision that the claimant's ability to operate a cash register, run his own business, read blueprints, and use tools were all "acquired aptitudes or abilities" transferable to other semiskilled work. Like the claimant in *Siterlet*, Ms. Burton also possessed a bundle of acquired, transferable skills ranging from basic math to customer service and inventory functions. Other panels of the Court have consistently applied the holding in *Siterlet* to other cashier cases which remain unpublished. Although some members of the panel may disagree with the reasoning of these cases, a contrary conclusion would show disrespect for precedent and would

tend to destabilize the law in the Sixth Circuit.

In *Joniec v. Secretary of Health & Human Servs.*, No. 87–1248, slip op. at 10–11 [848 F.2d 191 (table)] (6th Cir. June 9, 1988) (unpublished opinion), this Court affirmed the Secretary's finding that the claimant's job as a bartender gave him the transferable skills to use a cash register, make change for his customers, and deal with the public. The Court noted, however, that the claimant's skills were limited and transferable only to non-computerized cash registers.[3] Further, the Court analogized the use of a cash register to that of a typewriter, which this Court found to be a transferable skill in *Ellington, supra. See Joniec*, slip op. at 11. In light of *Joniec*, therefore, it would be difficult to dispute that this Court has recognized cashier's skills as transferable. *See also Philipian v. Secretary of Health & Human Servs.*, No. 88–1603 [870 F.2d 657 (table)] (6th Cir. March 7, 1989) (cash register skills transferable to sedentary and light work); *Brown v. Secretary of Health & Human Servs.*, No. 87–1964 [865 F.2d 1267 (table)] (6th Cir. January 9, 1989) (claimant's cash register skills transferable to sedentary work); *cf. Buckler v. Bowen*, 860 F.2d 308, 310 (8th Cir.1988) (letter carrier's skills transferable to cashier work); *Warncke v. Harris*, 619 F.2d 412, 414–17 (5th Cir.1980) (truck driver and oilfield roughneck's skills transferable to cashier work).

█ It is not enough, however, that the claimant possess transferable skills; their transfer must require little if any vocational adjustment. The vocational expert offered testimony comparing Ms. Burton's past work to the self-service cashier work which he recommended that she pursue. Self-service cashier's jobs, said the expert, of which there are 4,500 in the local economy, require only sedentary exertional levels, and permit an employee to alternate from a sitting to a standing position at will. Further, the prospect of lifting or carrying is slight, since the vocational expert testi-fied that the lion's share of self-service cashier's work is done within the confines of a booth. Ms. Burton therefore could readily transfer her cashier's skills with little if any vocational adjustment.

█ Burton raises an additional argument in her reply brief. She argues that under the grid rules she can only be required to transfer to a skilled job, not a semi-skilled job. Since she is of advanced age, the argument continues, she cannot be required to make such a jump in skill levels. This interpretation is unwarranted, requiring a strained and illogical reading of the regulations. Burton quotes 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(f) which states that "[i]n order to find transferability of skills to *skilled sedentary work* for individuals who are of advanced age (55 and over), there must be very little, if any, vocational adjustment required in terms of tools, work processes, work settings, or the industry." *Id.* (emphasis added). In asserting that the regulation does not mention transferability of skills to semi-skilled work, Burton failes to note that 20 C.F.R. Pt. 404, Subpt. P, App. 2, Grid Rule 201.03 explicitly states that a person of advanced age whose prior work is skilled *or semi-skilled* will not be found to be disabled if his or her skills are transferable. Further, Burton's reading of the grid rules would thwart the regulatory intent and mean that persons with an identifiable skill who can clearly perform identified jobs with little or no adjustment would be granted benefits. The cited regulation was intended to set forth the level of adjustment a claimant of advanced age would be required to make. It was not intended to limit the type of work a claimant would be required to perform.

Accordingly, we reverse the decision below and affirm the Secretary's denial of benefits.

---

**3.** There is no such evidence here. There is no discussion in the record of the technological level of skill required in Ms. Burton's past work. Ms. Burton offered no proof as claimant on the specific type of machines she had operated, and we are in no position to find that her skills are limited to archaic machines not currently in use in the marketplace.