958 F.2d 371
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Margaret MCBRYDE, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 91-1403.
 United States Court of Appeals, Sixth Circuit.
 March 23, 1992.
 
 Before MERRITT, Chief Judge, NATHANIEL R. JONES and SILER, Circuit Judges.
 MERRITT, Chief Judge.
 
 
 1
 In this Social Security case brought under 42 U.S.C. § 405(g), the plaintiff Margaret McBryde, a 59-year old woman with a history of mental, emotional and physical defects, appeals from the District Court's denial of her motion for summary judgment and granting of summary judgment to the defendant, the Secretary of Health and Human Services ("Secretary"), arising from the denial of her application for disability benefits. For the reasons set forth below, we reverse the order of the District Court.
 
 
 2
 Three mental health experts have analyzed the plaintiffs' psychological condition. Dr. Best evaluated her on three separate occasions between 1980 and 1989 to assess her capacity for vocational rehabilitation. Based on I.Q. testing which is not challenged (verbal of 73, performance of 74, a full intelligence quotient of 74, and a test age of a 7 1/2-year old), Dr. Best testified that the plaintiff suffers from borderline mental retardation. According to Dr. Best, this condition manifests itself in poor planning and lack of self-control, mild schizophrenia, delusions, and psychosomatic pain. Over the eight-year period during which he conducted these three vocational rehabilitation analyses, Dr. Best's evaluation of Ms. McBryde's condition became more pessimistic, concluding in his last session that the plaintiff was severely mentally deficient and unable to attend adequately to her personal hygiene on a daily basis. We find no evidence of substance which contradicts this testimony. Dr. Lipton determined in 1980 that she suffered from traumatic neuroses and "conversion reaction," a form of psychosomatic disorder. His testimony is consistent with Dr. Best's, as is the testimony of Dr. Palmer that Ms. McBryde suffered from "psychogenic pain disorders." Moreover, Dr. Freeman, the claimant's treating physician, testified that she is "completely unable to work."
 
 
 3
 We review Ms. McBryde's claim under the criteria listed in 20 C.F.R. § 404.1520 (1991). These impose on the Secretary the burden of showing that there is substantial work in the national economy which the claimant can perform. See, e.g., Burton v. Secretary of Health and Human Services, 893 F.2d 821, 822 (6th Cir.1990). In performing this review, our scope of inquiry is limited to determining whether the Secretary's decision, as reflected in the decision of the ALJ and the Appeals Council, is supported by substantial evidence in the record. 42 U.S.C. § 405(g).
 
 
 4
 Dr. Best's first psychological tests in 1981 placed Ms. McBryde in the "borderline range of mental retardation" and noted that a basis existed to believe that she suffered from schizophrenia. He concludes: "Mrs. McBryde's serious psychological disability leads to a poor prognosis." Dr. Best's separate vocational rehabilitation of Ms. McBryde, also in 1981, is more pessimistic:
 
 
 5
 Her multiple psychological problems further prohibit her from working in that she manifests very limited ability to learn from experience and is ... withdrawing from reality. Considering the seriousness of Mrs. McBryde's multiple disabilities, I would say that there are no jobs in the Michigan economy which she could perform.
 
 
 6
 (Emphasis added). These evaluations were based on administration of three standard psychological tests, as well as an interview. Dr. Best's evaluation was supported by Dr. Lipton's earlier diagnosis of "[c]hronic, traumatic neurosis [and] conversion reaction." Dr. Best's 1985 evaluation chronicles her continuing mental deterioration and the 1989 report depicts a woman with an ongoing history of severe mental disabilities. Dr. Best's evaluations note that part of the plaintiff's psychological symptoms included delusional and highly exaggerated behavioral responses. Our review of the record convinces us that substantial evidence regarding the psychological condition of Ms. McBryde does not support the Secretary's decision to deny disability benefits.
 
 
 7
 As to Ms. McBryde's challenge to the ALJ's hypothetical question to Dr. Tripi, substantial evidence also is insufficient to support the Secretary's position. While the ALJ omitted many of the symptoms characterizing the plaintiff's condition in his hypothetical, Dr. Tripi's testimony nevertheless indicated her belief that Ms. McBryde possessed a "psychiatric deficit." When asked to consider the full extent of Ms. McBryde's psychological and physical limitations, the vocational expert responded in her 1985 testimony that the plaintiff "would not be able to sustain detailed activity" and that the existence of side effects of the medication "would eliminate all those jobs" in both the state and national economies. In her most recent testimony, based on the plaintiff's testimony concerning side effects, Dr. Tripi again stated: "Well, in listening to the various comments that [the plaintiff] made, I would say that she would not be able to sustain detailed activity " (emphasis added).
 
 
 8
 Despite Dr. Best's and Dr. Freeman's evidence, as two qualified experts well-placed to observe Ms. McBryde's credibility, and Dr. Palmer's assessment that she suffered from a psychogenic disorder, the ALJ summarily rejected this testimony as well as that concerning the debilitating side effects of the medications she was taking. The ALJ's conclusion that the plaintiff's "only mental impairment of consequence ... is [sic ] mild mental or intellectual limitations" directly contradicts his earlier finding that she suffered from a psychogenic-somatoform disorder and is primarily based on his personal assessment of her credibility. While the ALJ is best placed to determine matters of credibility, the ALJ may not arbitrarily reject the testimony of the scientific experts in the case on the ground that his own personal opinion leads to a contrary result. See, e.g., Garland v. Secretary of Health and Human Services, 528 F.Supp. 415, 416-17 (E.D.Mich.1981).
 
 
 9
 Our review, although limited, does not require us to abandon our common sense or experience. The disability determination is to be "made in light of the realities of the job marketplace." Burton, 893 F.2d at 823. It defies common sense to believe that the psychological state of a 59-year old plaintiff, with the psychological age of a 7 1/2 year-old child and with extensive emotional and physical limitations, could find substantial gainful activity under these circumstances. Substantial evidence does not support the ALJ's decision in this case.
 
 
 10
 Accordingly, the judgment of the District Court is REVERSED and REMANDED, with instructions that the District Court remand this case to the Secretary for an award of benefits from the onset date of plaintiff's disability.
 
 
 11
 SILER, Circuit Judge, dissenting.
 
 
 12
 I respectfully dissent from the majority opinion. First, as the opinion states, this court is limited to determining whether the Secretary's decision is supported by substantial evidence in the record. 42 U.S.C. § 405(g).
 
 
 13
 Here, the Secretary, through the Appeals Council, discounted the evidence from Dr. Best, a psychologist, not a treating physician, on claimant's alleged mental illnesses, as contrasted to her mental deficiencies (which were not disputed). Instead, the Secretary relied upon the examination of Dr. Milton Palmer, a board-certified psychiatrist, who examined claimant in 1981. He opined that she had no medically determinable disease but had a psychogenic pain disorder, although her complaints were not consistent with the diagnosis of psychogenic pain disorder. The majority opinion asserts that it finds no evidence of substance which contradicted the testimony of Dr. Best, but the opinion by Dr. Palmer clearly does, in the view of Dr. Robert A. Sobel, the medical advisor to the Secretary.
 
 
 14
 Moreover, the Secretary relied heavily on evidence from Dr. Richard Freeman, claimant's treating surgeon for over ten years. There was no indication from his diagnostic notes that while claimant was taking prescribed medicine during this time, she had any adverse side effects which would cause her to be disabled, as she claims.
 
 
 15
 It is true that the claimant suffers from borderline mental retardation. Nevertheless, even with that problem, she has managed to hold a substantial number of jobs and has an eighth grade education. She worked for a book binding company for about a year, worked in a restaurant for ten years and then managed a restaurant for five to ten years, worked as a nurse's aide, and worked for General Motors in an automobile plant for more than ten years. Apparently, her borderline mental retardation did not preclude her from obtaining nor keeping those jobs.
 
 
 16
 Finally, the Secretary found that although claimant was unable to perform her past relevant work on and prior to March 31, 1986, her last date of insured status, she had the residual functional capacity for light work. This conclusion was based upon the analysis of a vocational expert (VE), using a hypothetical question posed by the ALJ from the facts he found. In particular, the ALJ discounted the credibility of the claimant after considering all the medical reports.
 
 
 17
 I fear that the majority opinion is substituting its personal judgment for that of the VE. The criteria are set out in 20 C.F.R. § 404.1516: "Any work (jobs) that (claimant) can do must exist in significant numbers in the national economy." Furthermore, 20 C.F.R. § 404.1566 states: "It does not matter whether (1) Work exists in the immediate area in which (claimant lives); (2) A specific job vacancy exists for (claimant); or (3) (Claimant) would be hired if (she) applied for work." My personal feeling that claimant is not likely to be hired cannot replace the opinion of the VE. To do so would bring chaos to the court system, for some judges in areas of high unemployment might find claimant unable to be employed, whereas a judge from a region of low unemployment would find claimant to be readily employable.
 
 
 18
 Like the magistrate judge in this case, were I to be considering the case de novo, I might find claimant disabled. However, the decision of the Secretary is to be affirmed if supported by substantial evidence. Siterlet v. Secretary of Health and Human Services, 823 F.2d 918, 920 (6th Cir.1987) (per curiam). In this case, there is such evidence, and I would affirm.