995 F.2d 1066
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
James B. CRAWFORD, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH & HUMAN SERVICES, Defendant-Appellee.
 No. 92-6024.
 United States Court of Appeals, Sixth Circuit.
 June 11, 1993.
 
 Before JONES and BATCHELDER, Circuit Judges, and ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Claimant James B. Crawford appeals the final order of the United States District Court denying his motion for summary judgment and granting the Secretary of Health and Human Services' motion for summary judgment in his civil action for judicial review of the denial of his application for benefits under the Social Security Act. We affirm.
 
 
 2
 * James Crawford applied for disability benefits in November 1989, and his application was denied both initially and upon reconsideration. He then requested a hearing before an Administrative Law Judge (ALJ). On March 4, 1991, the ALJ held a hearing, which included testimony from Crawford and a vocational expert. On May 26, 1991, the ALJ issued a written opinion denying Crawford's claim for benefits. The Appeals Council denied Crawford's request for review, and Crawford sought judicial review by filing a civil action in the United States District Court for the Middle District of Tennessee. After both parties moved for summary judgment, a Magistrate Judge recommended that the Secretary's motion for summary judgment be granted. The District Court approved the Magistrate Judge's Report and Recommendation and entered judgment in favor of the Secretary. This appeal followed.
 
 
 3
 Crawford was 61 years old at the time of the hearing before the ALJ. He had received a B.S. degree in animal husbandry in 1953, and from 1975 to 1987, he had worked as a quality control supervisor at a glass plant. As part of his duties, he would monitor the work of manufacturing personnel and check the production processes, which sometimes required that he walk along the production line and lift automobile glass weighing from 10 to 50 pounds.
 
 
 4
 Crawford has a history of lower back problems beginning over 30 years ago. He stated at the hearing that he experiences chronic back pain and as a result can only sit or stand for 15 to 20 minutes and walk for 15 to 20 minutes. Crawford stated that he was taking Darvon a couple of times a week for his back pain. He occasionally uses a cane when walking. He described a typical day as mostly involving reading or watching TV in a reclining chair and walking in his yard. He also said that his medications caused occasional dizziness and drowsiness. He suffers from insomnia at night and must nap once a day.
 
 
 5
 In December 1987, Crawford sustained a myocardial infarction. He was hospitalized briefly and then released. A subsequent cardiac catheterization revealed only a single vessel disease and a successful angioplasty relieved this condition. His doctor recommended that he quit smoking, walk daily, and ride a bike four days a week for 30 to 45 minutes. Thereafter, he quit smoking, has been walking regularly, and has had no significant chest pain since that time. He did not return to work after his heart attack.
 
 
 6
 The medical records of Dr. Mark Houston, Crawford's treating internist, noted Crawford's complaints of lower back pain throughout Crawford's medical history. In February 1988, Dr. Houston advised Crawford to focus on outdoor cycling because Crawford's back pain limited his walking pace. In May 1988 and again in September 1988, Dr. Houston completed a one-page "Physician's Report" apparently for Crawford's employer's health insurance provider. In that report, Dr. Houston dated Crawford's disability from December 1987 to the present, and in response to a question about Crawford's expected date of return to work, he wrote, "Patient is unable to work." This opinion was based either primarily or completely on Crawford's mild heart attack, not on his back pain. On December 19, 1988, Dr. Houston reported that Crawford's back pain had markedly improved. Dr. Houston did not complete a medical assessment regarding Crawford when requested by the Social Security Administration.
 
 
 7
 Dr. Russell, Crawford's treating orthopedist, examined Crawford in July 1988 and confirmed that Crawford had a significant back problem. He wrote, "I would think that [Crawford] is disabled for his work because of his back and I think that if he can go out on medical retirement, that would be good." Dr. Russell did not complete the medical assessment form requested by the Social Security Administration.
 
 
 8
 On March 10, 1988, Crawford was seen by Dr. Stanley Reid who determined, after X-rays and tests, that Crawford had spinal stenosis, but recommended that Crawford discontinue his back pain medication and replace it with certain anti-inflammatory agents.
 
 
 9
 On January 19, 1990, Crawford was examined by Dr. Grafton Thurman at the Secretary's request. Dr. Thurman found some physical problems with Crawford's spine and confirmed that Crawford had considerable lower back pain. On the medical assessment form he completed, Thurman offered his opinion that Crawford's physical condition permitted him to frequently lift or carry ten pounds, and stand or walk for two hours and sit for six hours out of an eight hour workday.
 
 
 10
 At the hearing before the ALJ, Dr. Kenneth Anchor, a vocational expert, testified that the physical limitations found by Dr. Thurman were consistent with sedentary work, and that in performing his past relevant work, Crawford had acquired transferrable skills in the areas of employee supervision, data review, document review, and decision making. These skills, Anchor said, would be readily transferrable to a sedentary job, with little vocational adjustment. Dr. Anchor listed noncomplex customer service, data change clerk, proofreader, and addressing machine operator as examples of sedentary work available in the local economy that Crawford could perform. The ALJ used this testimony in conjunction with all the medical evidence to conclude that Crawford was not disabled within the meaning of the regulations.
 
 II
 
 11
 Under 42 U.S.C. § 405(g), the ALJ's findings of fact are conclusive if supported by substantial evidence. " 'Substantial evidence' means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Kirk v. Secretary of Health and Human Servs., 667 F.2d 524, 535 (6th Cir.1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)), cert. denied, 461 U.S. 957 (1983).
 
 
 12
 * Crawford first argues that the ALJ did not properly evaluate his subjective complaints of pain. He asserts that his pain is of a disabling level and that objective medical evidence supports the existence of severe medically determinable impairments which suggest that he is experiencing symptoms consistent with his statements. The ALJ found that while Crawford did have lower back pain, it did not rise to a disabling level and Crawford's own testimony as to the severity of his pain was "not fully credible."
 
 
 13
 The standard to be applied in considering a claimant's allegations of disabling pain is set forth in 20 C.F.R. § 404.1529 (1991) and Duncan v. Secretary of Health and Human Servs., 801 F.2d 847 (6th Cir.1986). See McCormick v. Secretary of Health and Human Servs., 861 F.2d 998, 1002-03 (6th Cir.1988) (even though Duncan concerned temporary statutory provision which has since expired, the Duncan analysis still applies to allegations of disabling pain). First, it must be determined "whether there is objective medical evidence of an underlying medical condition." Duncan, 801 F.2d at 853. Once this first prong has been met, it must then be determined: "(1) whether objective medical evidence confirms the severity of the alleged [disabling[1] pain arising from the condition, or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain." Id.
 
 
 14
 The ALJ found that Crawford had severe impairments such as spinal stenosis and degenerative arthritis of the back; thus, Crawford satisfies the first prong of the Duncan standard. But, the ALJ did not find that the objective medical testimony supported a finding that the pain was as severe as Crawford claimed it to be or that Crawford's own subjective complaints as to the level of pain were credible. Thus, the second prong of Duncan was not satisfied.
 
 
 15
 This finding is supported by substantial evidence. First, the objective medical evidence did not confirm the severity of the alleged pain. Although Dr. Russell found evidence of significant back problems in July 1988, in August 1988, Dr. Houston reported that Crawford's pain had improved, and again in December 1988, Dr. Houston noted that Crawford's pain had markedly improved. Dr. Thurman found that Crawford's pain was not so severe to disable him from any work. Although Dr. Reid concluded that Crawford had spinal stenosis, he recommended that Crawford stop taking Darvon. None of the medical evidence presented indicated that the pain from Crawford's back condition was so severe as to be disabling.
 
 
 16
 Second, special deference is owed to the ALJ's credibility determination of Crawford's subjective complaints because of his opportunity to observe the demeanor of the claimant. Beavers v. Secretary of Health, Educ. and Welfare, 577 F.2d 383, 387 (6th Cir.1978); Siterlet v. Secretary of Health and Human Servs., 823 F.2d 918, 920 (6th Cir.1987). However, an ALJ must cite to evidence other than his personal observations in rejecting the claimant's credibility. Martin v. Secretary of Health and Human Servs., 735 F.2d 1008, 1010 (6th Cir.1984) (citing Weaver v. Secretary of Health and Human Servs., 722 F.2d 310, 312 (6th Cir.1983)). The ALJ has met this requirement. The ALJ pointed to several facts in support of his conclusion that Crawford's complaints of pain were not fully credible: Crawford did not undergo the surgery recommended by one of the doctors, at times he took no medication for his back pain, the types of medication prescribed did not indicate a disabling level of pain, the orthopedic specialist did not rule out the possibility that he could do some work, and Dr. Thurman found that Crawford could perform sedentary work. In addition, the ALJ found that Crawford's own statements that he occasionally drove, picked up groceries, and was able to do exercise for his heart further diminished Crawford's credibility as to his subjective complaints regarding the severity of his pain. Thus, the ALJ's assessment of Crawford's credibility as to his subjective complaints of pain is supported by substantial evidence.
 
 B
 
 17
 Crawford argues that the ALJ failed to accord due deference to the opinions of his treating physicians.
 
 
 18
 "The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference." Harris v. Heckler, 756 F.2d 431, 435 (6th Cir.1985). However, "[an] ALJ is not bound by conclusory statements of a treating physician that a claimant is disabled, but may reject determinations of such a physician when good reasons are identified for not accepting them." Hall v. Bowen, 837 F.2d 272, 276 (6th Cir.1988).
 
 
 19
 The ALJ noted that neither Dr. Houston nor Dr. Russell was willing to complete a medical assessment regarding Crawford for the Social Security Administration. A medical assessment would have described what kind of work, if any, Crawford could perform. Statements like Dr. Houston's, "Patient is unable to work," and Dr. Russell's, "I would think that [Crawford] is disabled for his work," were not binding on the ALJ because (1) they were apparently about Crawford's ability to do his past work, not his ability to do any work, and (2) were ultimate conclusions on the issue to be decided by the ALJ. Having determined that the treating physician's opinions were not dispositive of the issue, the ALJ could have reasonably given greater weight to Dr. Thurman's medical assessment, because Thurman, while identifying the same medical impairments as the treating physicians had, explained what those impairments would mean for Crawford's ability to perform work of some kind. Thurman identified functional limitations consistent with a finding that Crawford could perform sedentary work, and the ALJ was justified in considering this as an indication of Crawford's ability to perform work. The ALJ's decision was supported by substantial evidence.
 
 C
 
 20
 Crawford also argues that the ALJ failed to consider his significant functional limitations, evidenced by his testimony regarding his activities of daily living, when the ALJ determined his residual functional capacity.
 
 
 21
 Sedentary work involves "substantial sitting as well as some standing and walking." Wages v. Secretary of Health and Human Servs., 755 F.2d 495, 498 (6th Cir.1985). Alternating between sitting and standing to accommodate a claimant's impairments may not be within the definition of sedentary work, id.; Howse v. Heckler, 782 F.2d 626, 628 (6th Cir.1986), and "[i]n cases of unusual limitation of ability to sit or stand, a [vocational expert] should be consulted to clarify the implications for the occupational base," Wages, 755 F.2d at 498; Soc.Sec.Rul. 83-12.
 
 
 22
 The ALJ posed a hypothetical question to Dr. Anchor, the vocational expert, to determine if Crawford would be precluded from performing the full range of sedentary work. A vocational expert's response to a hypothetical question that accurately portrays the claimant's impairments may provide substantial evidence upon which the ALJ may rely. Varley v. Secretary of Health and Human Servs., 820 F.2d 777, 779 (6th Cir.1987). Although the hypothetical question must be supported by evidence in the record, Hardaway v. Secretary of Health and Human Servs., 823 F.2d 922, 927 (6th Cir.1987), it need not include the claimant's subjective complaints which are not supported by evidence in the record, Blacha v. Secretary of Health and Human Servs., 927 F.2d 228, 231 (6th Cir.1990).
 
 
 23
 The ALJ set the "parameters" for determining whether there were other jobs which Crawford could perform, by posing a series of questions to the vocational expert, outlining the medical evidence as to Crawford's abilities and what the regulations required for a finding of disability. The vocational expert responded that Crawford was able to perform sedentary work and that there were sedentary jobs available which Crawford could perform. This was sufficient evidence to support the ALJ's finding.
 
 D
 
 24
 Crawford also asserts a specific failure with regard to the vocational expert's testimony. He contends that the vocational expert's testimony overrated the transferability and marketability of Crawford's skills. The vocational expert, Crawford contends, merely recited of a list of sedentary jobs and asserted that Crawford could perform them.
 
 
 25
 The ALJ found that Crawford was unable to perform his past relevant work. Once it is determined that the claimant cannot perform his past relevant work, the burden then shifts to the Secretary to show that the claimant can do other work. 20 C.F.R. § 404.1560(c). In order to determine the availability of jobs which the claimant can perform, the Secretary may rely on testimony of a vocational expert. Kirk v. Secretary of Health and Human Servs., 667 F.2d 524, 529 (6th Cir.1981), cert. denied, 461 U.S. 957 (1983). Factors which are considered in determining the claimant's ability to do other work are the claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1560(c). In addition, the claimant's skills must be transferable, and any work which the claimant can perform must exist in significant numbers in the national economy. Id.
 
 
 26
 Because Crawford was 61 years old at the time of the hearing, the regulations classified him as "a person of advanced age." 20 C.F.R. § 404.1563(d). Section 404.1563(d) states: "If [the claimant is] close to retirement age (60-64) and [has] a severe impairment [he will not be considered] able to adjust to sedentary or light work unless [he] has skills which are highly marketable." Although "highly marketable" is not defined in the regulations, one court has opined that a claimant's skills would be shown to be "highly marketable" if, despite claimant's age, he would be competitive in the job market for the positions identified by the vocational expert. See Renner v. Heckler, 786 F.2d 1421, 1425 (9th Cir.1986).
 
 
 27
 The vocational expert stated that in his opinion, skills were "highly marketable" if they were in demand. "In demand" can reasonably be considered equivalent to a finding of "competitive in the job market." The vocational expert stated that from Crawford's past work, he had acquired supervisory, report preparation, data review, document review, data management, decision making, communication, dexterity, hand/eye coordination, motor coordination and perceptual motor skills. The vocational expert testified that in his opinion, these skills were "highly" and "readily" marketable, and this provided substantial evidence for the ALJ's finding.
 
 
 28
 The regulations also require that the claimant's skills be transferable. 20 C.F.R. § 404.1568(d). In addition, "[i]t is not enough ... that the claimant possess transferable skills; their transfer must require little if any vocational adjustment." Burton v. Secretary of Health and Human Servs., 893 F.2d 821, 824 (6th Cir.1990). "The transferability of skills depends largely on the similarity of work activities among the previous and suggested jobs." Id. at 823.
 
 
 29
 The vocational expert testified that Crawford had acquired transferable skills in performing his past work, and he gave examples of jobs into which Crawford's skills would transfer. He stated that although there would be some differences between the performance of his old job and the performance of the sedentary jobs he identified, these differences would present very little, if any, vocational adjustment.
 
 
 30
 The vocational expert's testimony demonstrated that Crawford had skills which were highly marketable and readily transferable. The vocational expert also testified that there were significant numbers of jobs in Crawford's regional economy which Crawford could perform with little vocational adjustment. Based on this testimony, the ALJ's finding that the Secretary had met his burden of showing that other work existed which Crawford could perform is supported by substantial evidence.
 
 III
 
 31
 The ALJ's finding that Crawford was not disabled is supported by substantial evidence. The ALJ properly evaluated Crawford's subjective complaints of pain and the physician's medical opinions. The objective medical evidence supported a finding that Crawford's limitations allowed him to perform sedentary work. The vocational expert's testimony established that Crawford had acquired skills which were highly marketable and readily transferable. Because the ALJ's determination is supported by substantial evidence, we AFFIRM.
 
 
 
 [1]
 "Disabling" is implied by the context of this statement in Duncan