61 F.3d 904
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Wilson B. ROCHELLE, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 94-5384.
 United States Court of Appeals, Sixth Circuit.
 July 17, 1995.
 
 On Appeal from The United States District Court for the Middle District of Tennessee; No. 92-00151, L. Clure Morton, J.
 M.D.Tenn.
 REVERSED.
 Before: Ryan and Jones, Circuit Judges, and Matia, District Judge.*
 Per Curiam.
 
 
 1
 Plaintiff-Appellant Wilson B. Rochelle appeals the denial of his application for social security disability benefits. Because we find that the Administrative Law Judge's ("ALJ") denial of benefits was not supported by substantial evidence, we reverse the determinations of the ALJ and the district court, and order that Rochelle's application for benefits be granted.
 
 I.
 
 2
 On January 23, 1991, Rochelle filed an application for Supplemental Security Income ("SSI") based on chronic pain in his lower back which had required four surgical procedures. This application was initially denied and again denied on reconsideration. Rochelle then requested and was granted a hearing before an Administrative Law Judge, during which he presented various medical evidence and testimony that he was in pain.
 
 
 3
 The evidence presented at Rochelle's administrative hearing established the following: Rochelle was born in March, 1944, and received a General Equivalency Degree in 1975. All of his past relevant work experience -- as a carpenter, deputy sheriff, and bulldozer operator -- is considered "heavy work" under the social security regulations.[2] Between 1987 and the time Rochelle petitioned for SSI benefits, he saw three physicians and had four surgical procedures performed on his back by orthopedic surgeon G. William Davis. Rochelle testified that even following the surgical procedures, he remained in severe pain at all times and that he frequently needed to lie down to relieve the pain.
 
 
 4
 The Secretary called a vocational expert to testify during the administrative hearing. Responding to questions posed by the ALJ, the vocational expert opined that if Rochelle was able to occasionally change between sitting and standing positions, then Rochelle would be capable of performing a variety of "light" and "sedentary" jobs.[3] These jobs included gate-tending positions, parking lot attendant, ticket seller, food and beverage order clerk, and general cashiers positions. J.A. at 67-70. When asked, however, whether Rochelle could perform any jobs if he was limited to sitting and standing for about an hour at a time, and if he had to lie down at frequent periods throughout the day in order to relive his pain, the vocational expert responded that he was unaware of any jobs that Rochelle could perform. J.A. at 71-72.
 
 
 5
 Following Rochelle's administrative hearing, the ALJ concluded that "despite a 'severe' impairment, [Rochelle] can perform a limited range of light work, including those jobs identified by the vocational expert at the hearing. Because there are a significant number of jobs that [Rochelle] can perform, he cannot be found disabled under Title XVI of the Social Security Act." J.A. at 11. Rochelle appealed the ALJ's decision to the United States District Court for the Middle District of Tennessee, but the district court granted the Secretary's motion for summary judgment. Rochelle now appeals the ALJ's decision and the subsequent judgment of the district court.
 
 II.
 
 6
 The standard of review applicable to this case was stated in Myers v. Secretary, HHS, 893 F.2d 840, 842 (6th Cir. 1990). That standard is
 
 
 7
 whether the Secretary's decision to [deny benefits] is supported by substantial evidence. 42 U.S.C. Sec. 405(g). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." In our review, we do not consider the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility.
 
 
 8
 Myers, 893 F.2d at 842. (citations omitted). See also Richardson v. Perales, 402 U.S. 389, 401 (1971); Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938); Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).
 
 III.
 
 9
 On appeal, we find that substantial evidence did not support the ALJ's decision to deny Rochelle's request for benefits. Pursuant to 42 U.S.C. Sec. 423(d)(1)(A), "disability" is defined as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See also 20 C.F.R. Sec. 416.905. Claimants of SSI and other social security benefits bear the ultimate burden of proving disability within the meaning of the statute. Tyra v. Secretary, HHS, 896 F.2d 1024, 1028 (6th Cir. 1990); 20 C.F.R. Sec. 416.905. Once a claimant establishes his inability to perform past relevant work, 20 C.F.R. Sec. 416.960(b), the burden shifts to the Secretary to show that, considering the realities of the job marketplace, the claimant still can perform a substantial numbers of other jobs. Burton v. Secretary, HHS, 893 F.2d 821, 822-23 (6th Cir. 1990); 20 C.F.R. Sec. 416.960(c).
 
 
 10
 Here, no one contests that Rochelle met his initial burden of proof by showing that he was unable to perform his former work as a carpenter, deputy sheriff, or bulldozer operator. Thus, the burden shifted to the Secretary to demonstrate that, although Rochelle lacked the ability to perform his past relevant work, he still was capable of performing a substantial number of jobs. The Secretary sought to meet her burden through the testimony of a vocational expert. See Varley v. Secretary, HHS, 820 F.2d 777, 780 (6th Cir. 1987) (holding that the Secretary may meet her burden when a vocational expert has considered a hypothetical question that accurately portrays the claimant's physical or mental impairments and determines that the claimant is capable of performing jobs). Two of the hypothetical questions that the ALJ posed to the vocational expert failed to consider Rochelle's asserted need to lay down in order to relieve his pain. In response to these two hypothetical questions, the expert was able to identify jobs that Rochelle could perform. The third hypothetical question considered Rochelle's alleged need to frequently lay down, and in response to this question, the expert could not identify any job that Rochelle could perform.
 
 
 11
 The ALJ, however, rejected Rochelle's subjective complaints of pain, and thus his application for SSI benefits, based upon the activities that Rochelle was able to perform. These activities included daily visits with friends, driving, and cooking. The ALJ also considered that Rochelle did not take prescription medication for his pain. J.A. at 15. The magistrate and the district court reached the same conclusion. After reviewing the entire record, it is clear to this court that the ALJ had virtually no basis for rejecting Rochelle's complaints regarding his pain, and that the vocational expert's testimony did not support the ALJ's conclusion that Rochelle was capable of performing a variety of light and sedentary jobs.
 
 
 12
 Under the Social Security Act and the regulations promulgated pursuant thereto, when evaluating subjective allegations of pain, the ALJ must make the following two inquiries: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain." Duncan v. Secretary, HHS, 801 F.2d 847, 853 (6th Cir. 1986). Here, all of the medical evidence presented supported Rochelle's allegations of pain. Rochelle first saw Dr. Davis in September 1987, complaining of lower back pain. In July 1988, Dr. Davis performed a percutaneous diskectomy (an excision of the invertebral disk performed through the skin) on Rochelle's L-5/S-1 joint. In February, 1989, Rochelle returned to Dr. Davis for a second percutaneous diskectomy. The pain reoccurred in January, 1990, leading Dr. Davis to conclude, "I guess we need to start looking at this a bit more carefully because he is really getting into some serious discomfort now." J.A. at 212.
 
 
 13
 In February, 1990, Dr. Davis performed a lumbar laminectomy, foraminotomy (an excision of the posterior arch of a vertebra and removal of the roof of the inverterbral foramina) disk excision of the L5-S1 on the right, with fusion of L5-S1 bilaterally using a bone graft and titanium screws. Dr. Davis's notes, following this surgery, indicated that Dr. Davis was losing confidence regarding a positive prognosis for Rochelle. See J.A. at 237. Dr. Davis subsequently referred Rochelle to Dr. David McCord.
 
 
 14
 Before seeing Dr. McCord, Rochelle saw Dr. Randall Davidson for a "Tennessee Disability Determination." J.A. at 204. Dr. Davidson examined Rochelle and concluded,
 
 
 15
 The patient's potential to work and lift reveals he should be able to occasionally lift up to 30 pounds. He should probably not be able to frequently lift or carry more than 20 pounds. He also would not be able to tolerate a job where he is sitting for more than half the time, but might be able to tolerate a job where he would have frequent changes from sitting to standing that involve no heavy lifting.
 
 
 16
 J.A. at 205 (emphasis added).
 
 
 17
 Dr. McCord saw Rochelle in July 1991, and he recommended that Rochelle undergo a lumbar myelogram. Dr. Davis performed this operation on September 17, 1991, but Rochelle's post-myelogram CT-scan showed "moderate circumferential subligamentous disc bulge with moderate right foraminal encroachment" to be present at the L5-S1 joint. J.A. at 221. Dr. Davis's post-operation notes state,
 
 
 18
 I ... don't feel further surgical intervention is advisable.
 
 
 19
 I have worked with him now for over three years and he still hasn't responded. Consequently, I feel that further surgical intervention is not advisable. I think he would do well if they could get him on Social Security because I don't think I can do anything physically to solve his problem. He may end up in a chronic pain clinic somewhere but right now, I don't think there is anything I can do to solve his problems.
 
 
 20
 J.A. at 236.
 
 
 21
 Thus, of the three doctors that examined Rochelle, only Dr. Davidson concluded that there was even a possibility that Rochell could work. In denying Rochelle's application for benefits, however, the ALJ mischaracterized Dr. Davidson's findings. The ALJ stated that Dr. Davidson "found the claimant able to lift up to 30 pounds occasionally, 20 pounds frequently, sit half a day with frequent changes from sitting to standing (Exhibit 25)." J.A. at 14. Dr. Davidson never found that Rochelle was able to do anything. Rather, the doctor found that Rochelle "might be able to tolerate a job where he would have frequent changes from sitting to standing that involved no heavy lifting." J.A. at 205 (emphasis added). Moreover, the ALJ failed to consider that subsequent to Dr. Davidson's examination, Rochelle received another examination leading to a fourth surgery and the discovery of a bulging disc.
 
 
 22
 Without question, the ALJ's conclusions regarding Rochelle's subjective allegations of pain "should not be discarded lightly." Varley, 820 F.2d at 780 (stating that "'since the A.L.J. ha[d] the opportunity to observe the demeanor of [the claimant], his conclusions with respect to credibility "should not be discarded lightly.""') (quoting Houston v. Secretary, HHS, 736 F.2d 365, 367 (6th Cir. 1984) (quoting Beavers v. Secretary, Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978))). Here, however, the ALJ's decision ignored the overwhelming weight of the evidence. Neither the fact that Rochelle drove into town, visited with friends, and sometimes cooked for himself, nor Dr. Davidson's ambiguous findings constitute "substantial evidence." Moreover, none of the medical reports introduced at the administrative hearing questions Rochelle's subjective complaints of pain. Therefore, we find that Rochelle is "disabled" within the meaning of 42 U.S.C. Sec. 423(d)(1)(A).
 
 IV.
 
 23
 We conclude that the ALJ lacked substantial evidence for rejecting Rochelle's subjective complaints of pain and for denying his request for SSI benefits. The medical evidence presented to the ALJ established that Rochelle had a medical condition of such severity that it could reasonably be expected to produce disabling pain. We find, moreover, that because the evidence supports Rochelle's claim that he needed to lie down frequently in order to relieve the pain in his back, the vocational expert's testimony supports Rochelle's application for benefits rather that the ALJ's denial of the application. Accordingly, we REVERSE the judgment of the ALJ and the district court, and we order that Rochelle's application for SSI benefits be granted.
 
 
 
 *
 The Honorable Paul R. Matia, United States District Court Judge for the Northern District of Ohio, sitting by designation
 
 
 [2]
 Social Security regulations define "heavywork" as work involving lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. 20 C.F.R. Sec. 416.967(d)
 
 
 [3]
 Under the applicable federal regulations, "light work" is defined as work that involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. It also requires a good deal of standing and walking. 20 C.F.R. Sec. 416.967(b). "Sedentary work" is work that involves lifting no more than ten pounds at a time with occasional lifting or carrying articles like docket files, ledgers, and small tools. This work primarily involves sitting with occasional standing and walking. 20 C.F.R. Sec. 416.967(a). Most unskilled sedentary jobs require good use of the hands for repetitive hand/finger actions